IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY, *et. al.*,

        Plaintiffs,                              Case No. 3:18cv00406-REP

v.

BIG PICTURE LOANS, LLC; MATT
MARTORELLO; and ASCENSION
TECHNOLOGIES, INC.

        Defendants.

_____ /

## TRIBAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS COMPLAINT

      Defendants, Big Picture Loans, LLC and Ascension Technologies, LLC (collectively, the "Tribal Defendants"), by counsel, submit this memorandum in opposition to Plaintiffs' Motion for Leave to File Second Amended Class Complaint (the "Motion") (ECF No. 185.)

### INTRODUCTION

      Through their proposed Second Amended Complaint, Plaintiffs seek to exponentially and chaotically multiply this proceeding by asserting thousands of separate claims (3,530 in total) across 24 Plaintiffs, 22 Defendants, and 30 causes of action.

      *First*, as a procedural matter, Plaintiffs' proposed amendments are late under the Court's Scheduling Order, without good cause for a late submission.  Virtually all of the 19 new Defendants sought to be added to this already-complex litigation were disclosed to Plaintiffs by December 7, 2017.  Thus, amendment is improper under the strict standards of Fed. R. Civ. P. 16(b).

      *Second*, Plaintiffs' 30 causes of action are improperly group-plead, as each is generally plead across three to seven boilerplate paragraphs that collectively accuse the "Defendants" of

having violated the law.   This failure to tether any factual allegations to a particular actor is independently fatal to amendment.

_Third_, granting Plaintiffs' Motion runs a substantial risk of violating the Defendants' due process rights, as Plaintiffs' proposed 30 causes of action span numerous state laws subject to Plaintiff-specific, Defendant-specific, and jurisdiction-specific defenses.   And, given the massive complexity of the 3,530 claims sought to be adjudicated, a prejudicial, confusing, and inefficient trial would be inevitable.

_Fourth_, the Court lacks personal jurisdiction over the 19 proposed new Defendants, all of whom lack the minimum contacts with Virginia necessary to satisfy basic constitutional standards or comply with the U.S. Supreme Court's binding precedent in _Bristol-Myers Squibb Company v. Superior Court of California_, _San Francisco County,_ 137 S. Ct. 1773 (2017).   Allowing non-Virginia state law claims to be brought by non-Virginia Plaintiffs against non-Virginia Defendants in this Court is violative of the Constitution's jurisdictional mandates.

_Fifth_, amendment should be denied as to the so-called "investor defendants," as the federal claims against them are futile.   With those federal claims dismissed, there is no basis to exercise supplemental jurisdiction over those defendants with respect to the state law claims.

In sum, Plaintiffs seek amendment in a manner that: (1) is untimely; (2) inconsistent with rules regarding joinder and standards for due process; (3) seeks to add futile claims; (4) attempts to have a federal court opine on complex issues of state law; and (5) attempts to bring new Plaintiffs and new defendants before the Court despite a lack of personal jurisdiction over those claims.

Apart from incorrect assertions of "timeliness," Plaintiffs account for none of these issues. However, each of them is sufficient to prevent amendment, and the Motion should be denied.

<u>**A**RGUMENT</u>

I.   **Proposed amendment should not delay resolution of the Tribal Defendants' pending motions to dismiss, which should be decided first to determine whether the Court contends it has subject matter jurisdiction over them for any purpose.**

Regardless of whether amendment is allowed (which is should not be for the many reasons below), this Court should proceed to decide the pending motions to dismiss filed by the Tribal Defendants, which are ripe for decision.

The new allegations in the proposed Second Amended Class Complaint have no effect on the pending Rule 12(b)(1) motions filed by the Tribal Defendants, which should be decided first. (ECF Nos. 39, 41.)  Indeed, Plaintiffs' counsel confirmed no additional jurisdictional discovery was needed for the Court to resolve those jurisdictional motions, which reflect a record that stands independent from the new allegations Plaintiffs seek to advance.  (*See, e.g.*, ECF No. 81, pp. 22-23.)  Put another way, the subject matter jurisdiction of the Court has been called into question through motions to dismiss that are fully briefed, and which should be decided first before assessing whether an amended version of the current complaint should be put on file against them.

To be clear, the Tribal Defendants' interest here in receiving a decision on the pending motions to dismiss is significant.  To allow the proposed Second Amended Complaint would potentially require: (1) undoing the pending briefing on the issue of tribal sovereign immunity; (2) reopening jurisdictional discovery; (3) substantial time, cost, and argument from 19 Proposed New Defendant related to their unique legal defenses; and (4) opening up joinder issues, venue concerns, bankruptcy concerns, cross- and counter-claims, and renewed efforts to stay.  The complications of unwinding the current posture of the case will inevitably delay this matter for many months.  And, Plaintiffs seem to agree that the new proposed pleading does not alter any of the fundamental arguments regarding sovereignty that are fully briefed before this Court.  (*See* ECF No. 186 p. 5) ("And although the proposed amendment will add a significant number of

additional parties, all of the facts supporting the claims against the new parties are already at issue in this case, and it involves the same illegal lending enterprise.").

As such, the Tribal Defendants submit that, if any amendment is allowed, it should be delayed until after the Court rules on the pending Rule 12(b)(1) jurisdictional motions to determine whether the Tribal Defendants should be named in connection with any amended pleading.

## II.     There is no good cause to permit this untimely amendment.

Moving to the merits of the Motion itself, the Fourth Circuit has made clear that the "good cause" standard of Fed. R. Civ. P. 16(b) must be satisfied to justify leave to amend a pleading *after* the deadlines of a scheduling order have passed. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 299 (4th Cir. 2008). This action was filed in June 2018. Here, the Scheduling Order required amendment to occur by October 12, 2018, and it explicitly noted that "[a]ny such motions filed thereafter will be entertained only upon a showing of good cause." (ECF No. 52 at p. 2.)

The "good cause standard is *much different* than the more lenient standard contained in Rule 15(a)." *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (emphasis added). "Rule 16(b) *does not* focus on the bad faith of the movant, or the prejudice to the opposing party." *Id.* (emphasis added). Instead, it "focuses on the timeliness of the amendment and the reasons for its tardy submission." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 707 (D. Md. 2011). Indeed, lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard."[1] *West Virginia Housing Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W.Va. 2001); *Gullo v. City of New York*, 540 Fed. Appx. 45, 46-48 (2d Cir. 2013) ("That defendants suffered no prejudice does not change the fact that plaintiffs

---

[1] Although diligence is "the primary consideration" and alone defeats a showing of "good cause" when absent, the court may consider certain other factors in denying amendment, including whether amendment will "prejudice" the non-moving party. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

failed to pursue amendment with diligence."). Thus, if a proposed amendment is based on "information that the party knew or should have known prior to the deadline, leave to amend is properly denied." *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012).

In their proposed Second Amended Complaint, Plaintiffs seek to name 19 new Defendants (the "Proposed New Defendants"): Justin Martorello; Brian McFadden; James Dowd; Simon Liang; Eventide Credit Acquisitions, LLC; Rebecca Martorello; Brian Jedwab; Amlaur Resources; Colombia Pipe & Supply Co.; Timothy Arenberg; Terrance Arenberg; DMA Trinity Wealth Transfer Trust; DTA Trinity Wealth Transfer Trust; Jeremy Davis; Kairos Holdings, LLC; Breakwater Holdings, LLC; Gallant Capital, LLC; Liont, LLC; and, Bluetech Irrevocable Trust. <u>All</u> of these Proposed New Defendant (excluding possibly Matt Martorello's wife, Rebecca) were identified to Plaintiffs' counsel no later than <u>December 7, 2017</u>, when the plaintiffs filed their opposition papers to the Tribal Defendants' motions to dismiss in *Williams, et al. v. Big Picture Loans, et al.,* No. 3:17-cv-461 (E.D. Va.) ("*Williams*"). (*See Williams*, ECF Nos. 91, 96.) In fact, the *Williams* plaintiffs' opposition briefs in December 2017 relied on exhibits that disclosed a majority of the Proposed New Defendants:

- Exhibit 91-1 is a December 31, 2015, spreadsheet that reveals the ownership interests in Bellicose Capital, LLC and discloses that, Simon Liang, Justin Martorello, Brian McFadden, and James Dowd held ownership interests and their roles in the companies.

- Exhibit 91-3 is a June 3, 2014 email from James Dowd, to several recipients, including Justin Martorello and Brian McFadden related to a direct mail recommendation.

- Exhibit 91-5 is a January 6, 2014 email chain regarding a "Meeting with Cheryl Parker Rose @ CFPB" including Justin Martorello among the recipients.

- Exhibit 91-7 is a September 11, 2015 email thread titled "Sale Model" and including Justin Martorello and Brian McFadden among the recipients. The exhibit includes an attachment that identifies Timothy Arenberg, Colombia

Pipe & Supply Co., Terrance Arenberg, DTA Trinity Wealth Transfer Trust, and DMA Trinity Wealth Transfer Trust.

- Exhibit 91-8 is the February 9, 2015 Certification of Formation for Eventide Credit Acquisitions, LLC.

- Exhibit 91-10 is the Secured Promissory Note between Tribal Economic Holdings, LLC and Eventide Credit Acquisitions, LLC.

- Exhibit 91-11 is a January 27, 2016 attachment to the "Operating Agreement of Eventide Acquisitions, LLC" listing Eventide's members and their membership interest, and includes: Breakwater Holdings, LLC; Gallant Capital, LLC; Justin Martorello; Brian McFadden; James Dowd; and, Simon Lang.

- Exhibit 91-16 is the Loan and Security Agreement between Tribal Economic Holdings, LLC and Eventide Credit Acquisitions, LLC.

Indeed, Plaintiffs sought to depose Dowd, Liang, and McFadden in the summer of 2018, which is a clear example of Plaintiff's knowledge of those individuals.  (*See Williams*, ECF No. 199.)

Moreover, in the fall of 2017, Matt Martorello produced numerous documents in *Williams* that identified the identities and roles of the Proposed New Defendants, including:

- Martorello produced a "Resolution of SourcePoint VI, LLC" that appoints Liont, LLC as the manager of SourcePoint VI, LLC.  *See* MARTORELLO_003429.

- Martorello produced a December 31, 2013 spreadsheet identifying the "Bellicose and Bluetech Organizational Structure" that identified the organization of Bluetech Irrevocable Trust, including the position of Breakwater Holdings in that organization.  *See* MARTORELLO_003658.

- Martorello produced a March 2016 spreadsheet with several workbooks, one of which details the "Notes Assumed" by Eventide related to its merger with Bellicose and the acquisition by TED.  The spreadsheet lists several "Note Holders:" Colombia Pipe & Supply Co.; Timothy Arenberg; Terrance Arenberg; DTA Trinity Wealth Transfer Trust; DMA Trinity Wealth Transfer Trust; Jeremy Davis.  *See* MARTORELLO_000408.

- Martorello produced an April 10, 2017 letter from Amlaur Resources, LLC, signed by Brian Jedwab, to Chippewa Valley Bank, concerning a deposit control agreement.  *See* MARTORELLO_003921.

- Martorello produced several spreadsheets that identified "Amlaur" as a creditor. *See, e.g.,* MARTORELLO_004762.[2]

Furthermore, by this Court's Order, the materials in *Williams* have been available to the Plaintiffs in *Galloway* since <u>October 19, 2018</u>, *six months before* they moved to amend in this action.  (*See* ECF No. 64.)  In short, the Proposed New Defendants were not "unknown to the Plaintiffs prior to the deadline to file an amended complaint in this case," as claimed.  (*See* ECF No. 186 p 4.) Nor did Plaintiffs moved for an amendment soon after learning of this new evidence, as required.

For these reasons, amendment should be denied.  *See Deasy v. Hill*, 83 F.2d 38, 40 (4th Cir. 1987) ("A motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.").  Indeed, this Court's Scheduling Order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 707 (D. Md. 2011).  Thus, "it is proper for a court to deny a motion to amend when the plaintiff knew or should have known facts which formed the basis for the new claim and failed to present any valid reason why they were not previously raised." *Stidham v. Jackson*, No. 2:07cv28, 2007 U.S. Dist. LEXIS 54032, at *10 (W.D. Va. July 26, 2007) (citing *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 314 (4th Cir. 1982)); *Wildauer v. Frederick County*, 993 F.2d 369, 372 (4th Cir. 1991) (refusal to permit amendment where motion was made after scheduling order deadline and information was available to the plaintiff earlier).

## III.   <u>The claims in the proposed Complaint are impermissibly group-pled</u>.

This Court should also reject the proposed Second Amended Complaint under the standards set forth in Fed. R. Civ. P. 8(a).  Plaintiffs': (1) conclusory 30 causes of action; (2) across

---

[2] Copies of all of these documents and their dates of production can be made available for *in camera* review, as needed.  But, Plaintiffs will not be able to contest their basic substance and timing, which renders their attachment as exhibits unnecessary at this juncture.

the laws of more than a dozen states; (3) against 22 separately-situated Defendants, make *no attempt* to tether the divergent elements of proof to any factual allegations for any particular actor. Indeed, each cause of action is generally plead across five or so boilerplate paragraphs that collectively accuse the "Defendants" of having violated the law.  To use but one of many, *many* like examples, the seventh cause of action under California's Business and Professional Code vaguely accuses all Defendants of engaging in "unlawful, unfair, and deceptive practices."  SAC at ¶¶ 388-391.  That group pleading is manifestly improper.

Allegations which are group pled against multiple defendants are insufficient, as a matter of law, when they fail to provide fair notice to each defendant of the specific actionable conduct and claims asserted against it.  *See, e.g., Parker Auto Body Inc v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4041000, at *5 (M.D. Fla. July 28, 2016) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."); *Bassam v. Bank of Am.*, 2015 WL 4127745, at *7 (C.D. Cal. July 8, 2015) ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide [the defendant] with fair notice of its alleged misconduct."); *see also Krell v. Queen Anne's Cty.*, 2018 U.S. Dist. LEXIS 209288, *61 (D. Md. Dec. 12, 2018) (holding that claims against "Defendant Correction[s] Officers" were "conclusory allegations made against a group of individuals" that was "not specific enough to state a claim that satisfies Rule 8(a).").

In this case, Plaintiffs have asserted their 30 causes of action under federal and state law against 22 defendants, all of which are separately situated, and many of which have had no alleged interaction at all.  However, in their 30 causes of action, Plaintiffs make no attempt to differentiate among the various actors, explain how the elements of their claim (including threshold definitional issues for the statutes invoked) apply to each defendant, or provide any factual allegations

satisfying the elements of the claims asserted.  Instead, this Court is left to guess how each actor would fit into the 30 causes of action, and only then after independently conducting extensive research into the elements of each claim.  That violates the particularity requirement of Rule 8(a), and amendment should be denied.

## IV.   The joinder of more than 3,500 separate claims is unprecedented in its scope and inconsistent with due process.

Although independently decisive, Plaintiffs' impermissible group pleading is a symptom of a much larger problem.  Plaintiffs' group pleading is a recognition of the fact that any attempt to particularize the allegations across individual Defendants is virtually impossible in this case given the incredible number of claims asserted; claims that each Defendant has a due process right to separately contest, including with respect to the facts of each Plaintiff.

Specifically, the Proposed Second Amended Complaint involves 24 individual Plaintiffs, 22 individual defendants, and 30 separate causes of action lodged under federal RICO and various state statutes under the laws of Virginia, California, Ohio, Illinois, Indiana, Washington, Florida, Texas, New Jersey, North Carolina, Maryland, Georgia, and Michigan.  All told, when multiplying the claims of each Plaintiffs against the 30 causes of action plead, **3,530 claims have been pled** – some of them by all Plaintiffs and/or against all Defendants, and others brought by or against only subsets.  The Proposed Second Amended Complaint would be unprecedented in its scope, wildly unmanageable, and thus contrary to due process.

### A.   The claims asserted are fact-dependent and subject to unique defenses, including legal defenses that will vary by state.

The propriety of joinder of multiple plaintiffs and defendants in a single lawsuit is governed by Fed. R. Civ. P. 20(a).  Under Rule 20(a), joinder is permitted when claims are asserted "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all those persons will arise in the action."  *Id.*  Both

requirements must be fulfilled to satisfy the Rule.  *See, e.g.*, *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).  And, when joinder would not be proper under Rule 20, leave to amend should be denied.  *See, e.g.*, *Jackson v. Jernigan*, No. 3:16-CV-00750, 2017 U.S. Dist. LEXIS 71965, *11 (W.D. Ky. 2017).  The individualized nature of Plaintiffs' 3,500 proposed claims against 22 separate Defendants belies a claim of "commonality" and requires denial of the Motion.

> <u>First</u>, the individual Defendants sought to be added in Plaintiffs' Second Amended Complaint are not only numerous (adding 18 new defendants), but also factually vary as to each defendant's alleged role.  For instance, Plaintiffs seek to add as defendants:

- Matt Martorello's wife and brother, Rebecca Martorello and Justin Martorello;

- Four individuals (Brian McFadden, James Dowd, and Simon Liang), that were employed by Bellicose Capital, LLC at various times and in varying roles;

- Numerous alleged lenders to the Tribal Defendants (Amlaur Resources, Columbia Pipe & Supply Co., DMA Trinity Wealth Transfer Trust, DTA Trinity Wealth Transfer Trust, etc.);

- Various employees of the alleged lenders to the Tribal Defendants in their individual capacity (Brian Jedwab, Timothy Arenberg, Terrence Arenberg);

- Five other companies that were allegedly created by Matt Martorello and were involved in some undefined activity connected to the Tribal Defendants.

This multiplicity of diverse defendants is inconsistent with the mandates of Rule 20.

> The Fourth Circuit has recognized that Rule 20's "transaction or occurrence" test permits joiner of only "reasonably related claims for relief by or against different parties."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1982).  And, merely "committing the same type of violation in the same way does not link defendants together for purposes of joinder."  *LHF Prods. v. Doe*, No. 3:16cv284, 2016 U.S. Dist. LEXIS 177743, at *11 (E.D. Va. Dec. 22, 2016).  Plaintiffs are thus required to plead "specific *facts* showing actual or concerted activity from which the Court could infer that joinder would be proper."  *Id.* (citation omitted) (emphasis in original).

The resolution of Plaintiffs' thousands of claims as to any single defendant would be highly individualized in their factual presentation and defenses. To use but one example, the proposed ninth cause of action is a class claim brought by the "Illinois Plaintiffs" against all Defendants under the Illinois Consumer Fraud Act (815 ILCS 505/2); SAC at ¶¶ 398-401. The elements of a claim under the Illinois Consumer Fraud Act are: "(1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996). "[A] valid claim [also] must show that the consumer fraud proximately caused plaintiff's injury." *Id.* (citation omitted).

Thus, with respect to just *one* of the 30 causes of action in Plaintiffs' proposed Second Amended Complaint, each "Illinois Plaintiff" must prove – with respect to <u>each</u> of the 22 Defendants – that <u>each</u> of the three *prima facie* elements are satisfied, as well as proximate causation of damages. That includes proof by each "Illinois Plaintiff" that <u>each</u> of the 22 Defendants had the requite "intent that plaintiff rely on the deception." *Id.* at 501. A similar analysis will be multiplied across each one of Plaintiffs' 30 proposed causes of action.

Federal courts, including those within the Fourth Circuit, have consistently denied joinder of claims requiring individualized factual determinations to assess liability, even when some factual overlap exists among the plaintiffs with respect to the named defendants. *See, e.g., Saval*, 710 F.2d at 1031-32 (affirming decision that allegations of fraud and breach of federal warranties concerning similar problems with automobiles failed to satisfy transactional test under Rule 20(a))*; Martinez v. Haleas*, No. 07 C 6112, 2010 U.S. Dist. LEXIS 31498, at *8-9 (N.D. Ill. Mar. 30, 2010) ("While there are similarities between each of the arrests in question – Haleas was the arresting officer in each and each arrest was for DUI – all of the arrests took place on different dates, in different locations, and under distinct circumstances during a two year period.").

11

*Second*, Plaintiffs' claims also will vary across all defendants based on the peculiarities of each state's law. For instance, the Tribal Defendants and Matt Martorello have already identified in the *Williams* matter what they consider to be a unique and dispositive defense under the law of the Commonwealth of Virginia, where the Supreme Court of Virginia has held that the applicable choice of law provision controls over state usury claims. *Settlement Funding LLC v. Neumann-Lillie*, 274 Va. 76, 80 (2007). While this Court disagreed with the arguments previously raised by the Tribal Defendants and Matt Martorello in that regard, there can be no question that such an issue is a substantial one, and one which that need to be litigated individually across each state.

## B.   Amendment would lead to a wholly unmanageable discovery and trial process.

Permitting amendment of the Complaint in this case would not only contravene Rule 20, it would run afoul of the purpose of that rule "to promote trial convenience and expedite the final determination of disputes," *Saval*, 710 F.2d at 1031, because, as a practical matter, such cases would present multiple "trials confusingly squeezed into one." *Cunningham*, 218 F.R.D. at 455.

### 1.   A joint trial with 24 Plaintiffs and 22 Defendants inevitably will result in prejudice, confusion, and inefficiency.

Distilled to its essence, any joint trial in this matter would involve a single jury presiding over the 3,500 claims of 24 Plaintiffs who assert varied factual grievances to be proved by different evidence against 22 Defendants. Where different evidence is involved, including different witnesses, so that a single jury could be easily confused, courts have repeatedly held that joinder is improper. *Haleas*, 2010 U.S. Dist. LEXIS 31498, at *8-9 ("Without severance of each plaintiff's claim, a jury would be required to hear evidence and make factual determinations concerning thirteen separate events in one trial. This would likely be confusing to the jury, prejudicial to defendants, and undermine any other economies in litigation that may come from allowing joinder of plaintiffs."). Likewise, where a jury's hearing different evidence may prejudice the defendant

and "deflect the jury's attention from the merits of each individual plaintiff's claim," those claims should be severed. *Lover*, 248 F.R.D. at 323 (quoting *Klimaski v. Parexel Int'l*, 2005 WL 857350, at *2 (E.D. Pa. June 24, 2005)).

This Court has previously considered such concerns in the analogous context of Fed. R. Civ. P. 23, which is also at issue here given the putative class nature of this proceeding.  In *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998), the Fourth Circuit affirmed the Court's decision to decertify an employment-discrimination class action. *Id.* at 753.  The plaintiffs accused Circuit City of engaging in pattern or practice of discrimination that resulted in adverse employment treatment of class members.  *Id.* at 749.  The plaintiffs indicated that evidence on forty-three class members would be presented at trial to show the pattern and practice, and that approximately 200 persons would be included in the class.  *Id.* at 754.  In denying certification, the district court determined that this trial procedure would be "unfair and inefficient."  *Id.* at 754.  In particular, the district court focused on the overlap in evidence in the two phases, which could cause prejudice to the defendant and undercut any alleged efficiency savings.  *Id.*  The Fourth Circuit then affirmed the decertification decision on the basis that the district court had legitimate concerns that the class would be "unwieldy and unfair to Circuit City."  *Id.* at 758.

In this action, there can be little doubt of the substantial risk of confusion and unfair prejudice if a single jury is allowed to hear all 24 Plaintiffs' claims against 22 separate Defendants in a single proceeding.  As described *supra*, the proposed ninth cause of action under the Illinois Consumer Fraud Act would require proof of all three *prima facie* elements, including intent and proximate causation of damages, as to *each* of the 22 Defendants.  That same or similar analysis will be multiplied *30 times* across each one of Plaintiffs' proposed causes of action and involve divergent sources of proof.  Yet, the jury would be exposed to all such testimony and evidence. Such circumstances raise the very real potential for bias and unfair prejudice to defendants, and

such a trial should not be allowed. *See, e.g.*, *Wynn*, 234 F.Supp.2d at 1067 (denying joinder of fifty plaintiffs due to inevitable prejudice to the defendants).

**2.**   **Logistical concerns militate strongly in favor of denying amendment.**

In stark contrast to the complete certainty of an unwieldy, exceedingly-lengthy, confusing and prejudicial trial, the proposed joinder of 24 Plaintiffs and 22 Defendants raises a host of unanswered questions, which include, but are certainly not limited to: (1) in what order Plaintiffs and/or defendants will be tried and why; (2) how such a lengthy trial can be completed in a reasonable time to accommodate the many other litigants needing the Court's attention; (3) whether separate jury instructions or jury verdict forms would be used; (4) to what extent evidence introduced for one Plaintiff can be used with respect to another Plaintiff; (5) when and how expert testimony will be introduced and made clear to which Plaintiff it applies; and (6) how the jurors can meaningfully recall testimony relative to 24 individual Plaintiffs and/or 22 loosely-connected defendants that was given weeks or months prior to their deliberations. The logistical implications alone of a joint trial for all 24 Plaintiffs (*e.g.*, 100 or more business days of evidence) would be overwhelming for the Court, the jury, and all parties involved on any number of levels.

To be clear, this chaos would also not be limited to trial. Discovery in this case – with 22 Defendants collectively serving thousands of requests for admission, requests for production, and interrogatories on 24 Plaintiffs and *vice versa* – would quickly spiral out of control and beyond the Court's capabilities to mediate any disputes in an efficient yet informed manner. Even managing the schedules of counsel for depositions and case management conferences would be problematic. Plaintiffs' allegations also span many years, and discovery would also result in dozens, if not hundreds, of subpoenas. Scores of depositions would also be permitted under the Federal Rules of Civil Procedure. Thus, even severing the case for trial would come far too late.

14

V.     **The Court lacks personal jurisdiction over the 19 Proposed New Defendants.[3]**

Amendment should also be denied against the 19 new Defendants because the Court lacks

personal jurisdiction over them and the putative class members they seek to represent.  Indeed,

there is no possible basis for jurisdiction for the new out-of-state Plaintiffs asserting classes for

proposed non-Virginia class members against non-Virginia defendants.  Plaintiff's conceptions of

jurisdiction have stretched the concept well beyond its breaking point.

A.     **Exercising personal jurisdiction over the Proposed New Defendants violates core principles of due process.**

"In Virginia, to establish jurisdiction over a nonresident, this Court must consider first

whether jurisdiction is authorized by Virginia law, and then whether the exercise of jurisdiction

comports with the due process requirements of the Fourteenth Amendment to the United States

Constitution."  *5EI, LLC v. Take Action Media, Inc.*, No. 1:12cv492 (JCC/TRJ), 2012 U.S. Dist.

LEXIS 132443, at *9 (E.D. Va. Sep. 17, 2012) (citing *Consulting Eng'rs Corp. v. Geometric, Ltd.*,

561 F.3d 273, 277 (4th Cir. 2009)).  A defendant must have certain "minimum contacts" with the

forum such "as make it reasonable . . . to require the corporation to defend the particular suit which

is brought there."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945).

A court may assert either *specific* jurisdiction over a defendant where the cause of action

arises out of or relates to the defendant's contacts with the forum state, or *general* jurisdiction

based on a defendant's general and more persistent contacts with the forum state that are unrelated

to the allegations of the suit.  *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707,

712 (4th Cir. 2002).  Ordinarily, the "minimum contacts" must be "continuous and systematic," as

opposed to "casual . . . single or isolated," *id.* at 317, a requirement springing from the essential

---

[3] A plaintiff bears the burden "to prove grounds for jurisdiction by a preponderance of the evidence[,]" *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

principle "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1126-27 (4th Cir. 1986). "The significant contacts considered are those actually generated by the defendant." *Id.* at 1127. This focus on a defendant's own acts "serves the underlying due process objective of fair notice, giving 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).

*None* of the Proposed New Defendants reside in Virginia. (Compl. ¶¶ 49-67.) Nor are any of the Proposed New Defendants incorporated under the laws of Virginia or have their principal place of business in Virginia. *Id.* Plaintiffs thus cannot satisfy their burden of proving that the Court has general jurisdiction over the Proposed New Defendants. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 760 (2014).

Moreover, *none* of the Proposed New Defendants is alleged to have any connection to Virginia or activity in Virginia whatsoever, thereby also failing to satisfy the minimum standards for specific jurisdiction and core principles of due process. The Court may exercise specific jurisdiction over a defendant if: (1) the defendant purposefully availed itself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directed conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *See Mitrano v. Hawes*, 377 F.3d 402, 406–07 (4th Cir. 2004); *see also Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985). Plaintiffs have failed to allege ***any contact at all*** – much less the constitutionally-required "minimum contacts" – between the Proposed New Defendants and Virginia. Indeed, "[u]nique or insignificant relations with the

forum suggest an absence of purposefulness, leading to the conclusion that subjecting the defendant to personal jurisdiction would be fundamentally unfair." *Id.* That is the case here.

**B.     At minimum, the Court lacks personal jurisdiction over claims brought by the out-of-state Plaintiffs against the Proposed New Defendants.**

At minimum, and for the reasons stated in Section IV.A, *supra*, the Court cannot exercise personal jurisdiction over the claims of the non-Virginia Plaintiffs[4] against all of the Proposed New Defendants – who are all non-Virginia residents.  There is absolutely no connection to this forum for those Plaintiffs.  A line must be drawn.  Due process principles prohibit jurisdiction in a Virginia federal court over claims lodged in that attenuated posture and permutation of the case.

**C.     Jurisdiction is not proper under the RICO Act.**

Faced with these facts, and based on prior experience, Plaintiffs will inevitably argue that personal jurisdiction over the Proposed New Defendants is proper because Federal Rule of Civil Procedure 4(k)(1)(D) authorizes a court to exercise personal jurisdiction consistent with due process over any defendant who has been served with a summons as "authorized by a federal statute," and will then claim that 18 U.S.C. § 1965(d) authorizes nationwide service of summonses in RICO actions.  Plaintiffs will likely cite *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), for that proposition, where the Fourth Circuit held that § 1965(d) authorizes nationwide services of summonses on defendants and thus authorizes the exercise of personal jurisdiction, subject to other due process constraints under the Fifth Amendment, which the Fourth Circuit also held were satisfied.  *Id.* at 626–27.  Yet, the Court can – and should – disregard *ESAB*.[5]

---

[4] This group consists of Plaintiffs Browne, Buchert, Nolte, Minor, Titus, Pough, Martinez, Grandy, Sherman, Avent, Gray, Green, Madison, Hamm, Thomas, Paavo, and Tarleton.

[5] The Tribal Defendants note that the Court has disagreed with this statutory argument in prior cases, but they lodge it here for preservation purposes.

The *ESAB* court's interpretation of § 1965(d) is inconsistent with that provision's plain language.  Subsection 1965(d) only provides for nationwide service of with respect to those types of process that are not authorized by other provisions of § 1965: "*All other process* in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides . . . ."  18 U.S.C. § 1965(d) (emphases added).  Thus, the section necessarily does not refer to subsections (a)-(c), which themselves refer to summonses.  Put another way, because § 1965(d) concerns only the types of process not otherwise set forth in the statute, and because §§ 1965(a) and (b) each specifically provide for service of a summons, § 1965(d) cannot be read to authorize nationwide service of a summons on a defendant.

This logic is underscored by the litany of decisions to disagree with *ESAB* based on the plain language of § 1965 and its numerous subparts.  Every other federal circuit court and federal district court to consider the issue has disagreed with the Fourth Circuit's analysis in light of the foregoing analysis.[6]  Indeed, even the U.S. Department of Justice, the federal agency responsible for criminal enforcement of the RICO Act, has publicly rejected the *ESAB* court's interpretation of § 1965(d) when considering the other subsections.[7]  For those reasons, this Court should follow the plain text of § 1965 and reject any interpretation that seeks to authorize nationwide service of a summons on the Proposed New Defendants.

Furthermore, even if § 1965(d) did authorize nationwide service of a summons, *ESAB* recognized that "due process" must still be satisfied.  126 F.3d at 626-27.  With that independent requirement in mind, this Court must account for numerous Supreme Court decisions issued after

---

[6] *See, e.g.*, *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006); *Nutrimost, LLC v. Werfel*, No. 2:15-cv-531, 2016 WL 5107730, at *6 (W.D. Pa. Mar. 2, 2016); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008).

[7] *See* U.S. Dept. of Justice, Criminal Division, Organized Crime & Racketeering Section, *Civil RICO: A Manual for Federal Attorneys*, at 94 n.81 (Oct. 2007), *available at* https://www.justice.gov/criminal/foia/docs/2007civil-rico.pdf.

the *ESAB* decision, all of which hold that an assertion of general personal jurisdiction over a defendant is inconsistent with due process absent extensive contacts with the forum. *See, e.g., Daimler,* 134 S. Ct. at 761 ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 761–62 (citation and quotation marks omitted); *Walden v. Fiore,* 134 S. Ct. 1115, 1123 (2014) ("Due process . . . requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123.

Notably, the existence of these intervening and binding authorities has been identified by courts within the Fourth Circuit as rejecting claims of personal jurisdiction based on nothing more than service of process under the RICO statute. *See Gibson v. Confie Ins. Group Holdings, Inc.*, No. 2:16cv02872, 2017 U.S. Dist. LEXIS 105702 (D.S.C. July 10, 2017).

The same result must obtain here, where the Proposed New Defendants have no contacts with Virginia, let alone the substantial contacts that were still insufficient to ground personal jurisdiction in cases such as *Daimler*. And, as noted above, that conclusion is particularly acute for the non-Virginia Plaintiffs asserting out-of-state classes against the proposed non-Virginia defendants. Even the broadest reading of *ESAB* cannot endorse such a result.

At bottom, to the extent that Plaintiffs argue that Congress through the statute, or the Supreme Court using the rules enabling act, can create personal jurisdiction in Virginia on claims that otherwise could not be brought in Virginia, this argument must be rejected. Personal jurisdiction depends on due process, which rests on the Fourth Amendment of the U.S. Constitution, which is the supreme law of the land. It is the Constitution that trumps statutes and rules. And to the extent case law suggests that it is the other way around – that statutes and rules

can negate strictures of Due Process – such case law is plainly contrary to the current teachings of the Supreme Court's most recent personal jurisdiction holdings and cannot control here.

> **D.    The Court lacks personal jurisdiction over the Proposed New Defendants pursuant to the U.S. Supreme Court's ruling in *Bristol-Myers Squibb*.**

In addition to the lack of personal jurisdiction over the proposed out-of-state Defendants and out-of-state Plaintiffs, this Court also lacks personal jurisdiction over the putative out-of-state class members implicated by the non-Virginia class claims.

Plaintiffs allege 30 putative class claims in their proposed Second Amended Complaint – some of which are alleged on a national basis and others which are state-only classes for Plaintiffs residing in Virginia, California, Ohio, Illinois, Indiana, Washington, Florida, Texas, New Jersey, North Carolina, Maryland, Georgia, and Michigan.  Yet, this Court lacks personal jurisdiction over the Proposed New Defendants to adjudicate the claims of putative class members who: (1) are not located in Virginia; and (2) who did not engage in any activity connected to the Proposed New Defendants in Virginia.[8]  In such circumstances, there is no jurisdictional link to this forum.

The Supreme Court recently decided *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County,* 137 S. Ct. 1773 (2017), which rejected an attempted assertion of personal jurisdiction over a non-resident defendant by plaintiffs with no connection to activity occurring in the chosen forum.  In *Bristol-Myers*, more than 600 plaintiffs (only eighty-six (86) of whom were California residents) filed a civil action in a California state court against Bristol-Myers.  137 S. Ct. at 1777.  Bristol-Myers moved to quash service of summons on the nonresidents' claims, asserting lack of personal jurisdiction, which the trial court granted.  *Id.* at 1778.  Ultimately affirming the decision of the trial court, the Supreme Court emphasized that a

---

[8] The Proposed New Defendants are all organized and located out-of-state and are not subject to general jurisdiction in Virginia.  (*See* Compl. ¶¶ 49-67.)

plaintiff's claim must arise out of the defendant's contacts *with the forum* to permit the imposition of personal jurisdiction over the defendant. "What is needed . . . is a connection between the forum and the specific claims at issue." *Id.* at 1781. As we have explained, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents." *Id.* (internal citation omitted).

Here, Plaintiffs filed 30 class claims in a Virginia federal court, most of which are brought by non-Virginia Plaintiffs alleging claims under non-Virginia state laws against the Proposed New Defendants with no connections or activities in Virginia. *Bristol-Myers* prohibits exactly this type of scattershot pleading with no concern for the limits of due process.

Although *Bristol-Myers* was not in the context of a class action, its holding is nonetheless applicable to a putative class action. Indeed, the *Bristol-Myers* holding must apply in the class action context because personal jurisdiction is limited by due process, and Rule 23 cannot abridge a defendant's due process rights to present its defenses. *Lindsey*, 405 U.S. at 66.

For these reasons, since *Bristol-Myers*, numerous federal courts have applied its holdings to limit nationwide class actions that improperly seek to include claims with no connection to the forum state. *See, e.g.*, *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 U.S. Dist. LEXIS 62487, at *17 (N.D. Ill. Apr. 13, 2018) ("Nothing in *Bristol-Myers* suggests that it does not apply to named plaintiffs in a putative class action; rather, the Court reaffirmed a generally applicable principle – that due process requires a 'connection between the forum and the specific claims at issue.'"). This Court should do the same.

## VI.    Amendment is futile against the "investor defendants."

Matt Martorello has separately opposed Plaintiff's attempt to amend and join his relatives, businesses, and unrelated trusts to this case. The Tribal Defendants join those arguments, which

need not be repeated here.  In addition to those arguments, however, a core part of Plaintiff's attempt to dramatically multiply these proceedings against the Tribal Defendants is the requested addition of so-called "investor defendants" to the proposed Second Amended Complaint.  Those investor defendants are Amlaur Resources, Columbia Pipe, Timothy Arenberg, Terrance Arenberg, Jeremy Davis, DTA Trinity Wealth Transfer Trust, and DMA Trinity Wealth Transfer Trust, and Brian Jedwab.  Plaintiffs seek to hold them liable under three substantive provisions of RICO (§ 1962(a), (b), and (c), as well as § 1962(d)), which can give rise to liability for conspiring to violate one or more of the three foregoing subsections, as well as under state law.

The proposed addition of these investor defendants is not a well-founded attempt to plead claims under RICO or state law.  Instead, it is an attempt to exert leverage over Big Picture and Ascension and gain litigation advantage by seeking to involve their sources of capital, thereby disrupting *through the litigation process itself* what the law does not allow.  As detailed below, the proposed RICO claims in Counts One through Four against the investor defendants fail on multiple grounds as a matter of law.  Thus, leave to amend should also be denied as to them on the basis of futility.  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (a court must deny leave to amend under Rule 15(a) "when the amendment . . . would have been futile.").

## A.     RICO claims against the investor defendants fail for lack of proximate cause.

To state a RICO claim under any subsection, plaintiffs must establish that the conduct at issue proximately caused them harm.  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010). The Supreme Court has evaluated proximate cause in RICO actions using common-law principles, holding that proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged."  *Id.*  A plaintiff cannot state a RICO claim where "the causal connection [is] considered too tenuous" or where "plaintiff's theory ignored the more immediate causes of their injuries . . . "  *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260,

263 (4th Cir. 1994).  Thus, when a court evaluates a RICO claim for proximate causation, the central question is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *accord Walters v. McMahen*, 684 F.3d 435, 443-45 (4th Cir. 2012); *Caviness v. Derand Resources Corp.*, 983 F.2d 1295, 1305 (4th Cir. 1993).

Plaintiffs' claim of causation against the investor defendants straightforwardly fails these tests.  Extending money to a lender bears no direct relation to Plaintiffs' alleged injury (collection of usurious interest from Plaintiffs based on lending contracts voluntarily executed between Big Picture and Plaintiffs.).  Instead, a series of intervening acts was required by both the lender and Plaintiffs with respect to the loans that were freely-executed by Plaintiffs with Big Picture and/or Red Rock.  That lack of direct relation is fatal to Plaintiffs' RICO claims, as recently confirmed by binding Supreme Court precedent.  *Hemi Group*, 559 U.S. at 11 (even though the defendant's failure to file required reports with the state helped customers who owed taxes to avoid paying them, the Court refused to "stretc[h] the causal chain of a RICO violation so far . . . [when] the City's harm was caused directly by the customers, not Hemi").  Simply put, the "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity," as alleged here, "is insufficient to show proximate causation." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  That is all that is alleged here.

Further, the deficiency of any claim of proximate-cause is made plain by removing the investor defendants' loans from the Proposed Second Amended Complaint's narrative.  *See, e.g., Walters*, 684 F.3d at 444-45 (4th Cir. 2012) (using this mode of analysis to determine proximate cause).  If Big Picture had made usurious loans and collected unlawful debt from Plaintiffs without any capital from the investor defendants, then Plaintiffs' alleged injury would be the exact same.  Plaintiffs further make no attempt to try and tie any of their individual injuries to the funding of

any particular investor.  Indeed, such a claim would be implausible, as the "investment" identified by Plaintiffs generally occurred in 2012, 2013, and 2014, *see* Amend. Compl. ¶¶ 218-224, whereas Plaintiffs did not take out their alleged loans until 2015-2018.  *Id.* at ¶¶ 250-333.  Thus, the challenged actions of the investor defendants through investment and reinvestment were *complete* before Plaintiffs applied for their any loans, which also defeats a showing of proximate cause.

**B.     Plaintiffs have failed to state a claim against the investor defendants under RICO § 1962(b).**

In addition to the macroscopic failings with respect to causation, Plaintiffs' RICO claims against the investor defendants also fail under RICO §§ 1962(b) and (c) on additional grounds.

RICO § 1962(b) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is  engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b).  For the reasons set forth below, Plaintiffs do not allege that the investor defendants "*control*" the operations of Big Picture or Ascension, nor could they.  And, as to the "*interest*" alleged, Plaintiffs can only claim that the investor defendants have been provided with "a security interest Big Picture's collateral, including its consumer loans and accounts receivable."  Amend. Compl. ¶ 231.  That type of monetary "interest" in accounts receivable, however, is not what is contemplated by the statute.  Instead, based on an extensive survey of the legislative history of this provision, courts have concluded that "the 'interest' contemplated in . . . § 1962(b) is in the nature of *a proprietary one*, such as the acquisition of stock," which would allow the acquiring party to exert a degree of control in the alleged affairs.  *Moffatt, Enterprises, Inc. v. Borden, Inc.*, 763 F. Supp. 143, 147 (E.D. Pa. 1990) (emphasis added).  That is not alleged to be present here.  Thus, the claim under § 1962(b) is futile and amendment should not be permitted under that provision of the statute.

24

**C.**   **Plaintiffs have failed to state a claim against the investor defendants under RICO § 1962(c).**

RICO § 1962(c) states that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Plaintiffs' claims under § 1962(c) fail in that they cannot allege that any investor defendant exercised any control over the challenged lending operation or that the investor defendants were part of the challenged "enterprise."

**1.**   **The investor defendants did not "control" the lending operation.**

Directly relevant to the claims against the investor defendants, courts considering claims under § 1962(c) have routinely held that an investor relationship "does not qualify as 'conducting or participating' in the affairs of a RICO enterprise, even when the defendant is aware of the enterprise's unlawful activity. . . .  Plaintiffs' expansive theory of liability would similarly ensnare any individual or company that loans money to a corrupt enterprise.  Capital is the lifeblood of many businesses, but the important role played by financiers does not, without more, constitute 'conduct' within the meaning of RICO."  *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 416-17 (E.D.N.Y. 2017) (granting motion to dismiss: "Even construing the complaint in a light most favorable to plaintiffs, their allegations establish that defendant merely provide[d] professional services to [a third party co-conspirator] by entering into a financing agreement with that company and making loans to facilitate the sale of automobiles.") (internal citations omitted).  Put another way, "[l]ending money to an enterprise does not establish a role in directing the enterprise affairs."  *Berry v. Deutsche Bank Trust Co. Ams.*, No. 07 Civ. 7634, 2008 U.S. Dist. LEXIS 91561, at *17 (S.D.N.Y. Oct. 21, 2008).  Indeed, absent direction and control over an enterprise, it is settled that "provid[ing] banking services – even with knowledge of the fraud – is

25

not enough to state a claim under § 1962(c)." *Industrial Bank of Latvia v. Baltic Fin. Corp.* No. 93 Civ. 9032, 1994 U.S. Dist. LEXIS 8580, at *8 (S.D.N.Y. June 27, 1994).

The Fourth Circuit concurs in this analysis. *NCNB Nat'l Bank v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987) (affirming dismissal of RICO claims: "NCNB's only interest in either company was in its status as a secured lender. The normal incidents of a borrower-lender relationship, including monitoring, protection and disposition of collateral, do not amount to control. Actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions is required for the purposes of showing that a lending institution had control over a borrower.").

When weighed against these standards, the proposed Second Amended Complaint does not state a viable claim against the investor defendants. Apart from allegations regarding the size of the loans provided by the investor defendants, *see* Amend. Compl. ¶¶ 218-225, the *entirety* of the allegations against the investor defendants are made in the following paragraphs:

- The loans were a "large part" of Red Rock's success;

- Each investor received "periodic updates" from Bellicose and SourcePoint, including as to the status of the public docket of litigation initiated by the Tribe in New York against the New York Department of Financial Services;

- Each investor "had an opportunity to withdraw their money from the enterprise" but did not do so;

- Each investor executed a "direct loan and Security Agreement and Promissory Note with Big Picture," which provided them with a "security interest" in Big Picture's collateral;

- Each investor defendant continues to invest in the "enterprise."

*See id.* Despite the production of tens of thousands of pages of documents from third parties and parties alike, when constrained by the limits of Rule 11, these allegations are all Plaintiffs can

muster. And, these allegations are reflective of standard arrangements between innumerable corporate borrowers and investors across all industries.

Nowhere do Plaintiffs allege that these investor defendants "controlled" the "day-to-day" "management and operations" of the "enterprise," or that the investor defendants had the authority to compel the "borrower to engage in unusual transactions" outside the scope of its usual business, which would be required to try and bring them under the ambit of RICO. *NCNB Nat'l Bank*, 814 F.2d at 936. Indeed, such an allegation would itself be *contradictory* of the repeated (but false) claims that co-Defendant *Matt Martorello* and his companies/former non-tribal employees – and not the investor defendants or the Tribe – "control[s] the day-to-day operations of the lending enterprise." Amend. Compl. ¶ 11; *see also, e.g., id.* at ¶¶ 151; 194; 196; 197; 20. Plaintiffs have thus plead themselves out of court for these investor defendants by: (1) failing to allege that the control the day-to-day operations of Big Picture and Ascension; (2) identifying other actors, namely Matt Martorello, who they claim *do exercise such control*. Thus, the RICO claims against the investor defendants all fail.[9] *See United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (rejecting RICO liability based on defendant's "mere association" with the enterprise).

### 2. Plaintiffs have not alleged that the investor defendants are part of any "distinct enterprise."

In addition to demonstrating "control" in exchange for investment, to allege a RICO "enterprise" under § 1962(c), RICO plaintiffs must also plead "an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *United States*

---

[9] Plaintiffs will no doubt cite to *Solomon v. Am. Web Loan*, No. 4:17-cv-145, 2019 U.S. Dist. LEXIS 48420 (E.D. Va. Mar. 22, 2019), for their claim that the investor defendants can remain in this action and subject to RICO under § 1962(c). But, in that case, "Plaintiffs have alleged that [lender] Defendants' participated in extensive ongoing monitoring and rigorous oversight regarding its loan to [the customer]. . . . Plaintiffs' allegations support that [the lender's] monitoring included a thorough knowledge of the lending scheme between [the customer] and American Web Loan, and sufficient control over [the customer's] relationship with America." *Id.* at *14. Nothing of the sort is pleaded here.

*v. Turkette*, 452 U.S. 576, 583 (1981); *accord Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (citing *Turkette*, 524 U.S. at 583); *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 805 (7th Cir. 2008) (RICO "'enterprise' requires proof of 'an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making'").   Consequently, liability under § 1962(c) "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."   *Reves*, 507 U.S. at 185 (emphasis in original); *see also Levinson v. Mass. Mut. Life Ins. Co.*, No. 06-cv-086, 2006 WL 3337419, at *7 (E.D. Va. Nov. 9, 2006) (dismissing RICO claim where complaint "offered no facts to show that Defendants were acting outside the scope of their typical business affairs" to join the alleged "enterprise").

With these standards in mind, Plaintiffs allege no facts plausibly alleging the investor defendants' role in the enterprise's "functioning as a continuing unit," *Turkette*, 452 U.S. at 583, let alone how they fit into the hierarchical "structure" of the lending "enterprise" or participated in the *enterprise*'s affairs rather than their own, *Reves*, 507 U.S. at 185.   Nor does the Complaint attempt to articulate how any of the investor defendants were somehow "acting outside the scope of their typical business affairs" in connection with their investments in Big Picture/Red Rock. *Levinson*, 2006 WL 3337419, at *7.   To the contrary, all that is alleged is a typical lender-creditor relationship by entities that typically invest in lending operations.   That is insufficient.

**D.      Plaintiffs have failed to state any possible RICO claim against DTA Trinity Wealth Transfer Trust, DMA Trinity Wealth Transfer Trust, Jeremy David, Amlaur Resources, and Brian Jedwab.**

All of the RICO claims in Plaintiffs' proposed Second Amended Complaint also must be dismissed against a subset of the investor defendants (DTA Trinity Wealth Transfer Trust, DMA Trinity Wealth Transfer Trust, Jeremy David, Amlaur Resources, and Brian Jedwab), as Plaintiffs have failed to plead a "pattern" of racketeering activity against those defendants.

Each RICO claim plead alleges a "pattern" of racketeering activity as an element of its claim. Under the statute, a "pattern" requires that at least two acts of racketeering activity within a ten-year period be pleaded. 18 U.S.C. § 1961(5); *accord H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). For each of the five investor defendants identified in the foregoing paragraph, however, Plaintiffs allege only the existence of a s*ingle* loan within the prior ten years. Amend. Compl. ¶¶ 222-225. Thus, independent from all of the above failings, there can be no RICO claim against those five investor defendants, and amendment should be denied as to them.

###### E. With no viable federal claims remaining against the investor defendants, the pendent state law claims against them should be dismissed.

Plaintiffs claim that this Court has original jurisdiction over the investor defendants due to their RICO claims, and "supplemental jurisdiction" over the investor defendants with respect to their remaining "state law claims." Amend. Compl. ¶ 19. With the RICO claims against the investor defendants deemed futile, however, and assuming that the Court has not otherwise declined to hear such claims for the reasons above, the Court should decline to exercise supplemental jurisdiction over them under § 1367 with respect to the state law claims.

It is well established that, in general, "where the federal claims are dismissed before trial, pendent state law claims should be dismissed as well." *Aliff*, 2016 U.S. Dist. LEXIS 131310, at *36 (S.D. W.Va. Sept. 26, 2016) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). While a district court retains jurisdiction over the state law claims once the federal claims have been dismissed, Fourth Circuit precedents "evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (finding reversible error in a case where all federal claims had been dismissed and the district court failed to *sua sponte* decline to exercise supplemental jurisdiction over state law claims and remand to state court). That should occur here.

29

<u>CONCLUSION</u>

For the reasons set forth above, Big Pictire Loans, LLC and Ascension Technologies, LLC respectfully request that the Court: (1) decide their pending motions to dismiss; (2) deny Plaintiff's motion; and (3) grant them such other and further relief as may be appropriate.

**BIG PICTURE LOANS, LLC,
ASCENSION TECHNOLOGIES, LLC**

By:/s/ Timothy J. St. George
David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: tim.stgeorge@troutmansanders.com

Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
44 Grandville Ave.
SW Suite 300
Grand Rapids, MI 49503
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: jgray@rosettelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

Eleanor M. Drake
John G. Albanese
BERGER & MONTAGUE
43 S.E. Main St., Suite 505
Minneapolis, MN 55414
Telephone: 612-594-5999
Facsimile: 612-584-4470
Email: emdrake@bm.net
Email: jalbanese@bm.net
*Counsel for Plaintiffs*

Beth E. Terrell
Elizabeth A. Adams
Jennifer R. Murray
TERRELL MARSHALL LAW GROUP
PLLC
936 North 34th St., Suite 300
Seattle, WA 98103-6689
Telephone: 206-816-6603
Facsimile: 206-319-5450
Email: bterrell@terrellmarshall.com
Email: eadams@terrellmarshall.com
Email: jmurray@terrellmarshall.com
*Counsel for Plaintiffs*

Craig C. Marchiando
Elizabeth W. Hanes
Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: craig@clalegal.com
Email: elizabeth@clalegal.com
Email: lenbennett@clalegal.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
ARMSTRONG TEASDALE LLP
1500 Market Street
12th Floor – East Tower
Philadelphia, PA 19102
Telephone: 215-246-3479
Facsimile: 215-569-8228
Email: dherman@armstrongteasdale.com
Email: jboughrum@ armstrongteasdale.com
Email: rscheff@ armstrongteasdale.com
*Counsel for Defendant Matt Martorello*

31

Hugh McCoy Fain, III
John M. Erbach
Maurice F. Mullins
SPOTTS FAIN PC
411 E Franklin St.
PO Box 1555
Richmond, VA 23218-1555
Telephone: 804-788-1190
Facsimile: 804-697-2144
Email: hfain@spottsfain.com
Email: jerbach@spottsfain.com
Email: cumllins@spottsfain.com
*Counsel for Matt Martorello*

/s/ Timothy J. St. George
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1245
Facsimile: (804) 698-1300
Email: tim.stgeorge@troutmansanders.com