**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**RENEE GALLOWAY,** *et al.,*

    **Plaintiffs,**

v.    Civil Action No. 3:18-cv-00406-REP

**BIG PICTURE LOANS, LLC,** *et al.,*

    **Defendants.**

_____ /

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
(1) DECLARATION OF JOETTE PETE, (2) DOCUMENTS PRODUCED
BY JOETTE PETE, AND (3) JOETTE PETE FROM PLAINTIFFS' WITNESS LIST**

    Defendants, Big Picture Loans, LLC ("Big Picture"), and Ascension Technologies, LLC ("Ascension") (collectively, the "Tribal Defendants"), pursuant to Fed. R. Civ. P. 37(c), state as follows in support for their motion to strike (1) the Declaration of Joette Pete ("Pete Declaration") [ECF No. 286-3], (2) the documents produced by Joette Pete and included on Plaintiffs' Second Supplemental Disclosure ("Pete Documents"), and (3) Joette Pete as a witness at the evidentiary hearing scheduled for October 28, 2019.

### INTRODUCTION

    After two years of ongoing discovery by Plaintiffs' counsel in this matter and their companion suit, *Williams et al. v. Big Picture Loans, LLC, et al.*, Case No. 3:17-cv-461-REP (E.D. Va.) ("*Williams*"), on September 11, 2019, the Plaintiffs disclosed Joette Pete ("Pete") as a potential witness – then named her on their formal witness list for the October 28, 2019 evidentiary hearing. On September 13, 2019, Plaintiffs submitted for the first time a declaration from Pete. (ECF No. 286-3.)

The inclusion of Pete as a witness, the production of her (stolen Tribal) documents, and the production of the belated and plainly-ghostwritten[1] Pete Declaration, are late disclosures and should be stricken. First, the Pete Declaration – and the substance of the documents used to support it – were first included in Plaintiffs' Reply in Support of their Statement of Position Regarding Material Misrepresentations. Those submissions, however, were in no way responsive to the Tribal Defendants' opposition brief. The practice of introducing new evidence for the first time in a reply is not allowed, and the Court should strike the Pete Declaration for that reason alone.[2]

Additionally, the creation and production of the Pete Declaration, the production of the Pete Documents, and her identified inclusion as a witness at the upcoming jurisdictional hearing, were done well after jurisdictional discovery had closed. As such, Tribal Defendants have not had an opportunity to depose her or otherwise examine her claims. That late disclosure violates Fed. R. Civ. P. 37(c), and the appropriate sanction is striking the Pete Declaration, the Pete Documents, and Joette Pete from the witness list.

Finally, as a matter of law, her testimony is irrelevant to the proceedings at hand. It is not responsive to the *Breakthrough* factors used by the Fourth Circuit in determining Big Picture and Ascension were arms of the Tribe; it is not usable to support Plaintiffs' claims of "misrepresentation"; and it runs counter to the stated intent of the Tribe through resolutions. The

---

[1] Multiple paragraphs in the Pete Declaration obviously were ghost-written because Pete makes allegations as to events that would be impossible for her to have knowledge of – much less personal knowledge. (*See* ECF No. 286-3.) By example, Pete cannot competently testify to the information contained in paragraphs 5, 6, 7, and 8 describing Red Rock's business operations, as she had no day-to-day involvement with operations of Red Rock or Big Picture at any time. She likewise cannot competently testify to the information contained in paragraph 11, as she had no involvement with operations of Big Picture at any time.

[2] Indeed, the Court has acknowledged this rule in this case. (*See* ECF No. 81 at pp. 24-25.)

2

Court should find that the Pete Declaration, the Pete Documents, and Joette Pete's testimony would have no probative value, and therefore grant the Tribal Defendants motion to strike.

## **RELEVANT FACTUAL BACKGROUND**

On October 11, 2018, the Court ordered that "[a]ny additional jurisdictional discovery that the plaintiffs wish to complete, including requests for production, must be served by October 11, 2018 . . .[; a]ll deposition notices must be served by the plaintiffs by November 2, 2018; and [a]ll briefing on the jurisdictional issues in this case must be filed October 17, 2018." (ECF No. 64 at pp. 1-2.) On October 19, 2018, the Court entered an Order denying Plaintiffs' Motion for Jurisdictional Discovery. (ECF No. 82.) Subject to those Court-ordered deadlines, jurisdictional discovery closed in this matter.

On January 15, 2019, the Court held a hearing a discovery issues and issued an Order requiring Plaintiffs to "file a notice [by January 21, 2019] that identifies their position as to what jurisdictional discovery (if any) is necessary for the pending jurisdictional motions in this case." (*See* ECF No. 147 at p. 1.) The parties briefed those issues in early 2019.

Then, on May 9, 2019, the Court denied Plaintiffs' Proposal for Completing Jurisdictional Discovery [ECF No. 156], thereby foreclosing Plaintiffs' attempt to re-open the discovery period in this matter.[3] (ECF No. 224.) As Plaintiffs have represented on multiple occasions, and per the Court's Order, *discovery has been closed in this case since May 9, 2019*.

Thereafter, Plaintiffs' filed their Statement of Position Regarding Material Misrepresentations on June 28, 2019 [ECF No. 249], and the Tribal Defendants filed their

---

[3] The next day, the Court denied Plaintiffs' request to file an amended complaint or alternatively amend the stipulated protective order given issues of complexity, prejudice to the Defendants, and delay. (ECF No. 228.)

competing Statement of Position on August 9, 2019. (ECF No. 271.) The Court scheduled an evidentiary hearing for October 28, 2019. (*See* ECF No. 270.)

Despite this fact that discovery has been closed for many months, on September 11, 2019, Plaintiffs' served Second Supplemental Disclosures identifying for the very first time Joette Pete as a "witness" on their behalf, as well as over 2,000 stolen documents, the majority of which are confidential and/or privileged Tribal documents produced by Pete to Plaintiffs' counsel ("Pete Documents"). *See* **Exhibit A**. Then, on September 13, 2019, Plaintiffs' filed their Reply in Support of their Statement of Position (the "Reply Brief") and attached a never-before-disclosed Pete Declaration as Exhibit 3. (*See* ECF No. 286-3.) The Pete Declaration was executed on August 20, 2019, and inevitably preceded by numerous communications with counsel, but not produced or even mentioned to Defendants' counsel until September 13, 2019. Plaintiffs' Reply Brief [ECF No. 286] also cited and relied heavily on the stolen Tribal records that Pete produced to Plaintiffs' counsel at some point weeks ago. The Pete Declaration is also featured prominently in Plaintiffs' reply brief, but its allegations are directly contradicted by documents produced by Pete.

On September 24, 2019, Plaintiffs' identified Joette Pete as a witness on their behalf at the evidentiary hearing scheduled for October 28, 2019. (*See* ECF No. 298.)

To protect their interests to test the Pete Declaration and Pete's document production prior to the evidentiary hearing, both the Tribal Defendants and Matt Martorello served deposition and document subpoenas on Pete as a third party. Her deposition is currently scheduled for October 15, 2019 in Hibbing, Minnesota.

Plaintiffs have notified Defendants' counsel that they intend to move to quash the Pete deposition on grounds that discovery has been closed since May 9, 2019 – despite the fact that Plaintiffs themselves <u>engaged in discovery</u> by obtaining a declaration and stolen Tribal documents

4

from a third-party witness less than 2 months before the evidentiary hearing, and concealed their conduct until the last possible moment.

## ARGUMENT

**I.     The Pete Declaration and Pete Documents are new evidence improperly presented for the first time in Plaintiffs' reply brief.**

As a threshold matter, the Pete Declaration and Pete Documents are new evidence and arguments that were presented for the first time on September 13, 2019 in Plaintiffs' Reply in Support of their Statement of Position [ECF No. 286] (the "Reply Brief"). That violates well-established briefing principles and is improper.

This Court – and federal courts across the nation – prohibit the introduction of new evidence and arguments in a reply brief as a matter of fundamental litigation rule. Such evidence and arguments are inadmissible and disregarded. *See, e.g., DNT, LLC v. Sprint Spectrum, LP*, 750 F. Supp 2d 616, 630 (E.D. Va. 2010) ("Defendants did put forth new evidence and argument not offered in their opening brief which it will therefore not consider."); *Hegwood v. Ross Stores, Inc.*, 2007 WL 102993, n. 3 (N.D. Tex. 2007) ("The movant is not ordinarily permitted to introduce new evidence in support of a reply because such action would deprive the non-movant of a meaningful opportunity to respond.").[4]

Plaintiffs' filed their Statement of Position Regarding Material Misrepresentations ("Plaintiffs' SOP") on June 28, 2019. (*See* ECF No. 249.) They outlined twelve general allegations regarding, *inter alia*, the role of the Tribe in operating Big Picture and Ascension, as

---

[4] Plaintiffs also disclosed that they intend to call Pete as a live witness at the evidentiary hearing. (*See* ECF No. 298.) The Tribal Defendants have noticed Pete for a deposition to occur on October 15, 2019, which Plaintiffs have threatened to quash – taking the hypocritical position that the May 9, 2019 discovery closure date allows the presentation of their new evidence (*i.e.*, the Pete Declaration and Pete Documents) but somehow forecloses the Tribal Defendants' ability to question Pete or test the validity and relevance of her declaration and documents. That position is fundamentally unfair and contrary to the practice of this Court. However, if this motion is granted, then that discovery dispute will be mooted.

5

well as the degree of Matt Martorello and his businesses' involvement in Big Picture and Ascension's businesses. Much, if not all, of Plaintiffs' SOP dealt with the claimed intent of third parties, and their evidence centered around now-rejected arguments Plaintiffs made to the Fourth Circuit in *Williams v. Big Picture*, 929 F.3d 170 (4th Cir. 2019). **Critical here, Plaintiffs' SOP and accompanying exhibits *never relied upon or even mentioned Joette Pete*, the Pete Declaration, or the Pete Documents.**

On August 9, 2019, the Tribal Defendants responded to Plaintiffs' SOP in their Statement of Position Regarding Plaintiffs' Claims of Material Misrepresentations [ECF No. 271] ("Tribal Defendants' SOP"). Therein, the Tribal Defendants responded to Plaintiffs' claims, pointing out that many of them were largely irrelevant based on the *Breakthrough* factors outlined by the Fourth Circuit in *Williams*, and providing important factual context for other contentions made in Plaintiffs' SOP. **Because Joette Pete had never been relied upon or referenced in Plaintiffs' SOP, the Tribal Defendants' SOP also did not address Pete, the Pete Declaration, or the Pete Documents**.

Nevertheless, on September 13, 2019, Plaintiffs filed their reply brief in support of Plaintiffs' SOP [ECF No. 286] ("SOP Reply"). In the SOP Reply, Plaintiffs attached the Pete Declaration as Exhibit 3 and relied upon the Pete Declaration and Pete Documents throughout their filing. Plaintiffs did not engage the Tribal Defendants' SOP. Instead, their principal strategy was to dismiss it out of hand before attempting to sandbag the Tribal Defendants with the Pete Declaration and Pete Documents – materials she spirited away in violation of Tribal law.[5]

---

[5] Neither Plaintiffs' nor Pete have disclosed how they came into possession of these documents, but they constitute Tribal property and should be returned to the possession of the Tribe immediately. Anyone outside of the Plaintiffs' and Joette Pete who have reviewed them should be disclosed to the Tribal Defendants.

Plaintiffs even admitted in the SOP Reply that the Pete Declaration and Pete Documents were new, previously-undisclosed evidence. (*See* ECF No. 286, at pp. 5-6, n.4.)

There can be no doubt that the Pete Declaration and Pete Documents is new and untimely evidence. It was submitted well after the close of fact discovery, and it was submitted for the first time in a reply brief. For these reasons, the Court should strike the Pete Declaration and any references to the Pete Documents from Plaintiffs' SOP Reply.

## II. The Pete Declaration and Pete Documents should be stricken under Fed. R. Civ. P. 37(c) as untimely and unduly prejudicial.

The striking of the Pete declaration from the Reply Brief is only a small portion of the relief that is required based on Plaintiffs' improper discovery tactics. The Court should also impose sanctions under Rule 37 for the untimely submission of the Pete Declaration and Pete Documents, and it thus should preclude the introduction of the Pete Declaration or the Pete Documents from evidence, as well as preclude Pete from introducing any testimony at this jurisdictional stage of the case. Her testimony is delayed, harmful, and no sanction less than preclusion is adequate.

Sanctions under Rule 37 requires a three-step analysis: "(1) determining that a violation of a discovery order or one of the Federal Rules of Civil Procedure occurred; (2) determining whether that violation was harmless and substantially justified . . . ; and (3) fitting a sanction to the violation, if one is found." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 U.S. Dist. LEXIS 82679, at *12-13 (E.D. Va. June 24, 2016) (citing *Samsung Elecs. Co., Ltd. V. Nvidia Corp.*, 314 F.R.D. 190, 195-196 (E.D. Va. 2016)). All factors are satisfied here.

### A. The Plaintiffs violated this Court's discovery Order, as well as Rule 26.

With respect to the first factor, the late disclosure of Pete has violated this Court's discovery order preventing additional discovery, as well as the requirements of the Federal Rules of Civil Procedure.

7

Plaintiffs affirmatively obtained and used the Pete Declaration and Pete Documents after the close of discovery in this case. Those actions violated this Court's May 9, 2019 discovery Order denying Plaintiffs' attempt to engage in additional jurisdictional discovery. (*See* ECF No. 224.) The Fourth Circuit examined a similar situation in *Gomez v. Haystack Technology, Inc.*, 761 Fed. Appx. 220 (4th Cir. 2019). There, the appellant first disclosed two witnesses on the last day of the discovery deadline, and one witness three weeks after the discovery period had closed. *Id.* at 232. The appellant had been "aware of the witnesses for three weeks," and he had knowledge of the witnesses for months prior. *Id.* at 233-234. "Gomez was not entitled to delay disclosure in the name of unnecessary information even if, as Gomez's counsel argued, Gomez wanted to contact the witnesses before we placed them on a witness list." *Id.* Likewise, Plaintiffs' delay in disclosing Pete, the Pete Declaration, and the Pete documents is sanctionable, and those discovery materials should be excluded.

Furthermore, Plaintiffs' late disclosure also violates the requirement under Rule 26(e)(1)(A)(i) that a party must supplement or correct disclosures in a timely manner. Plaintiffs did not file their applicable Rule 26 disclosures identifying Pete until September 11, 2019 – less than two months before the evidentiary hearing and more than two years after the onset of this litigation. Moreover, they were in communication with Pete in August 2019, but failed to make any disclosures until mid-September. For these reasons, Plaintiffs' actions with respect to the Pete Declaration and Pete Documents violated a discovery Order of this Court, as well as Rule 26. The first prong of the test is met.

### B. Plaintiffs' untimely disclosure of the Pete Declaration and Pete Documents was neither harmless nor justified.

As to the second factor, the September 11, 2019 disclosure of the Pete Documents, and the September 13, 2019 disclosure of the Pete Declaration have caused significant harm and prejudice to the Tribal Defendants.

"The district court has 'broad discretion' to determine whether a disclosure violation is substantially justified or harmless under Rule 37(c)(1)." *United States v. $134,750 United States Currency*, 2013 U.S. App. LEXIS 15015, *11-12 (4th Cir. July 24, 2013). "[T]his discretion should be guided by an analysis of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id*. at *12 (citing *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)); *accord Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 721 (E.D. Va. 2001).

"Four of these factors – surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence – relate mainly to the harmlessness exception, while the remaining factor – explanation for the nondisclosure – relates primarily to the substantial justification exception." *Southern States*, 318 F.3d at 597. Bad faith is not a separate factor to consider when deciding whether to exclude evidence, "although under some circumstances, it might be relevant to the fifth factor of [the] test – the nondisclosing party's explanation for its failure to disclose evidence." *Id*. at 598.

Against these standards, Plaintiffs cannot credibly argue that their late disclosure was justified given their attempts to quash her scheduled October 15, 2019 deposition.

First, the Pete Declaration and Pete Documents were a complete surprise to the Tribal Defendants, submitted *one week* before the Tribal Defendants' exhibit list, witness list, and discovery designations were due for the October 28, 2019 evidentiary hearing. The Tribal Defendants have not been able to depose her, yet and now must expend unnecessary resources to oppose Plaintiffs' attempts to quash her scheduled deposition. Given the timing of the evidentiary hearing and Pete's late disclosure, the harm to the Tribal Defendants is actual and significant. Indeed, the October 28 evidentiary hearing amounts to a trial on the Tribal Defendants' sovereignty (which has already been confirmed by the Fourth Circuit). Plaintiffs should not be allowed to belatedly disclosure an allegedly "key" witness at the eleventh hour in those circumstances. In sum, the prejudice and harm related to Pete's late disclosure is clear.

Second, Plaintiffs undoubtedly will argue that Pete was unknown to them until recently, and thus, her late disclosure is "substantially justified." That is false. At the very latest,[6] Plaintiffs have known about Pete since at least May 2019 in conjunction with her alleged spoliation evidence for the *Williams* matter, where Plaintiffs requested her deposition.[7] Plaintiffs then affirmatively engaged in third-party discovery after the discovery period closed to obtain confidential Tribal documents from Pete and construct her declaration. And, even if Pete's late disclosure is found to be somehow justified, Plaintiffs' refusal to allow her deposition on October 15, 2019 removes any doubt about Plaintiffs' true motives and fundamental unfairness of the circumstances.

This is sandbagging, pure and simple, and the Court should not condone it. *See, e.g., Hartford Cas. Ins. Co. v. McJ Clothiers,* 54 Fed. Appx. 384 (4th Cir. Dec. 27, 2002) (affirming

---

[6] The Tribal Defendants and the Tribal Officers in *Williams* produced documents dating back to 2014, including hundreds of emails and Tribal Council documents that identified Pete as the Vice Chairwoman.

[7] *Williams, et al. v. Big Picture Loans, et al.*, No. 3:17cv461-REP (E.D. Va.) (Dkt. No. 516-2, attaching correspondence where Plaintiffs had requested to depose Pete on the issue of "spoliation").

district court's decision to exclude bad faith claim because party disclosed claim only three weeks prior to the close of discovery and did not provide basis for the claim until five weeks after the close of discovery); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 U.S. Dist. LEXIS 86457, *4-5 (S.D.N.Y. Aug. 17, 2010) ("prejudice to [the movant] is particularly great because discovery, which closed over four months ago, would have to be reopened for [the movant] appropriately to respond to ATA's damages calculations."); *see also Tex. Instruments, Inc. v. Hyundai Elecs. Indus.*, 50 F. Supp. 2d 619, 629 (E.D. Tex. 1999) ("To permit Hyundai to present evidence relating to the [belatedly disclosed theory] would endorse a veritable grab-bag of inexcusable conduct").

Plaintiffs' tactics and use of the Pete Declaration and Pete Documents has harmed the Tribal Defendants and lack any – much less a substantial – justification.

**C.    The appropriate sanction is striking the Pete Declaration and Pete Documents.**

Upon the finding of a discovery violation, Rule 37(c)(1) states that a court "(A) may order payment of the reasonable expenses, including attorney's fees, cause by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) – (vi)." Fed. R. Civ. P. 37(c)(1).

Given Plaintiffs' late disclosure and the significance of the issues to be presented at the evidentiary hearing, the Pete Declaration and Pete Documents should be stricken from the record and Pete should be prohibited from testifying at the evidentiary hearing.

Indeed, courts in the Fourth Circuit have consistently struck the testimony of witnesses identified in the first time in connection with motions practice after the close of discovery. *See, e.g., Manguiat v. Bd. of Educ.*, 2015 U.S. Dist. LEXIS 64346, at *12-13 (D. Md. May 18, 2015) ("Specifically, the School Board has been prejudiced by the surprise identification of the declarants as witnesses. Had Manguiat properly and timely identified the declarants as witnesses, the School

11

Board would have had the opportunity to depose the declarants in order to assess their degree of knowledge. Without that opportunity, the School Board is unable to meaningfully refute or otherwise challenge the veracity of the statements contained in the declarations. And at this late juncture, Manguiat cannot cure the impact of the surprise identification without causing significant disruption to this case. Indeed, discovery is closed, the School Board's summary judgment motion is fully briefed, and this matter has been pending for more than two years.").

The result should be no different here. There is no justification and no cure for the identification of a fact witness months after the close of discovery and weeks before an evidentiary hearing.

## IV. The Pete Declaration is inadmissible because, as a matter of law, it cannot be used to impeach or contradict the action of the Tribal Council.

Discovery violations aside, Plaintiffs undoubtedly will attempt to use the Pete Declaration and Pete Documents to impeach the stated purpose of the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe") and its tribal council (the "Tribal Council"). This is impermissible as a matter of law. The Tribe legislates and speaks through the Tribal Council and its resolutions, which are consensus documents of all of the Tribal Council members. Any individual Tribal Council member's motives or intent is *wholly irrelevant* to the Tribe's purpose or intent. *See Va. Uranium, Inc. v. Warren*, 848 F.3d 590, 598 (4th Cir. 2017) ("adher[ing] to the edict that courts 'will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'") (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)). The motive of an individual member is irrelevant to the actions of the representative body as a whole. The same is true here, where Pete improperly seeks to contradict the formal resolutions and documented intent of the Tribe/Tribal Council with her own, unsupported allegations as an individual member.

"[I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (*citing Tenney v. Brandhove*, 341 U.S. 367 (1951)). Yet, that is exactly what the Plaintiffs' would have the Court do. The Tribe makes its intent known through the deliberative process and through the Tribal Council resolutions it passes. Indeed, the Fourth Circuit – reversing this Court – held in *Williams*: "Big Picture and Ascension were both organized through resolutions by the Tribe Council, exercising powers delegated to it by the Tribe's Constitution, and the Entities operated pursuant to the Tribe's Business Ordinance." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019). In fact, the only intent the Fourth Circuit deemed relevant to its analysis was "the tribe's intent to extend its immunity to the entities." *Id.* at 184.

In *Flickinger*, this court previously ruled that the individual motives of three members of a seven-person board were irrelevant to its finding that the entire board, acting unanimously, did not share that improper motive. *See Flickinger v. Sch. Bd. Of City of Norfolk, Va.*, 799 F. Supp. 586, 594-595 (E.D. Va. 1992) ("Since a binding action of the Norfolk School Board requires a majority vote, an improper motive cannot be imputed to the entire School Board, which consists of seven members, on the basis of the motives of only three of its members."). Likewise, this court has also found that "an inquiry into whether [the Virginia General] Assembly's purported motives . . . was an inquiry that ran squarely afoul of the doctrine of legislative immunity." *Lee v. Virginia State Bd. Of Elections*, No. 3:15-CV-357, 2015 WL 9461505, at *5 (E.D. Va. Dec. 23, 2015) (internal quotations omitted).

The Pete Declaration is improper and inadmissible for the same reasons. The Tribal Council requires a majority vote to pass a resolution. (*See* ECF No. 38-1, Constitution of the Lac Vieux Desert Band of Lake Superior Chippewa Indians, Article III, Section 4(f)(3).) The Pete

13

Declaration seeks to impute on the entire Tribal Council *her* understanding of the agreement regarding management of the business. She provides no support as to her proclamation of the intentions or motives of the other members of the Tribal Council. Her understanding, in the face of contradicting testimony from members of the Tribal Council, cannot be imputed to the Tribal Council as a whole – and is therefore irrelevant.

Tribal Council resolutions are legislative actions; and thus, the rules of construction regarding legislative intent apply. "The legislative intent must be ascertained by examination of the plain words used in the statute." *P.M. Palumbo, Jr., M.D., Inc., v. Bennett*, 242 Va. 248, 251, 409 S.E.2d 152 (1991). As but one example, the Tribal Council explicitly states the Tribe's intent in Resolution No. 2011-041, saying:

> WHEREAS, The Tribal Council wishes to diversify the economy of the Tribe's Reservation in order to improve the Tribe's economic self-sufficiency; and WHEREAS, the Tribal Council has determined that it is in the best interest of the Band to form… an independent tribally chartered entity, to transact business in the form of a tribally owned lending enterprise…."

(*See* ECF No.38-4, Tribal Council Resolution No. 2011-041, Approving the Creation of the Lac Vieux Desert Band of Lake Superior Indians Tribal Lending Enterprise.) Pete's Declaration, in part, conversely asserts that the Tribe had no involvement or oversight of the Big Picture lending operations. Her testimony is at complete odds with the Tribal Council's unanimous and stated intent.

The Pete Declaration should be stricken and disregarded by the Court for this additional reason.

## CONCLUSION

WHEREFORE, the Tribal Defendants, by counsel, hereby request that the Court enter an Order striking (1) the Pete Declaration, (2) the Pete Documents, and (3) Pete from Plaintiffs' witness list for the October 28, 2019 evidentiary hearing.

**BIG PICTURE LOANS, LLC, AND ASCENSION TECHNOLOGIES, LLC**

By: /s/ Timothy J. St. George
Timothy J. St. George
Virginia State Bar No. 77349
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants Big Picture Loans, LLC and Ascension Technologies, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: david.anthony@troutman.com
Email: tim.stgeorge@troutman.com

Justin A. Gray (admitted *pro hac vice*)
Anna M. Bruty (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: jgray@rosettelaw.com
Email: abruty@rosettelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett
Elizabeth W. Hanes
CONSUMER LITIGATION ASSOCIATES
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com
Email: elizabeth@clalegal.com
*Counsel for Plaintiffs*

Beth E. Terrell (admitted *pro hac vice*)
Elizabeth A. Adams (admitted *pro hac vice*)
Jennifer R. Murray (admitted *pro hac vice*)
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th St., Suite 300
Seattle, WA 98103-6689
Telephone: 206-816-6603
Facsimile: 206-319-5450
Email: bterrell@terrellmarshall.com
Email: eadams@terrellmarshall.com
Email: jmurray@terrellmarshall.com
*Counsel for Plaintiffs*

Eleanor M. Drake (admitted *pro hac vice*)
John G. Albanese (admitted *pro hac vice*)
BERGER & MONTAGUE PC
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Telephone: 612-594-5999
Facsimile: 612-584-4470
Email: emdrake@bm.net
Email: jalbanese@bm.net
*Counsel for Plaintiffs*

David F. Herman (admitted *pro hac vice*)
Jonathan P. Boughrum (admitted *pro hac vice*)
Richard L. Scheff (admitted *pro hac vice*)
ARMSTRONG TEASDALE
1500 Market Street
12th Floor, East Tower
Philadelphia. PA 19102
Telephone: 215-246.3479
Facsimile: 215-569.8228
Email: dherman@armstrongteasdale.com
Email: jboughrum@ armstrongteasdale.com
Email: rscheff@ armstrongteasdale.com
*Counsel for Matt Martorello*

Kristi Cahoon Kelly
Kelly & Crandall PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7570
Facsimile: (703) 591-9285
Email: kkelly@kellyandcrandall.com

/s/ *Timothy J. St. George*
Timothy J. St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: tim.stgeorge@troutman.com

40206630v9         17