1                IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF VIRGINIA

3                     RICHMOND DIVISION

4

5    ---------------------------------------
                                          :
6    RENEE GALLOWAY, et al., as           :
     individuals and as representatives   :   Civil Action No.
7    of the classes                       :   3:18cv406
                                          :
8    vs.                                  :
                                          :   October 8, 2019
9    BIG PICTURE LOANS, LLC, et al.       :
                                          :
10   ---------------------------------------

11

12          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13            BEFORE THE HONORABLE ROBERT E. PAYNE

14                 UNITED STATES DISTRICT JUDGE

15

16   APPEARANCES:

17   Leonard A. Bennett, Esquire
     Consumer Litigation Associates, PC
18   763 J Clyde Morris Boulevard
     Suite 1A
19   Newport News, Virginia  23601

20   Kristi C. Kelly, Esquire
     Kelly Guzzo, PLC
21   3925 Chain Bridge Road
     Suite 202
22   Fairfax, Virginia  22030
     Counsel for the plaintiff

23

24                    Peppy Peterson, RPR
                      Official Court Reporter
25                    United States District Court

1    APPEARANCES:   (cont'g)

2    John M. Erbach, Esquire
     Spotts Fain, PC
3    411 East Franklin Street
     Suite 600
4    Richmond, Virginia   23219

5    Michelle L. Alamo, Esquire
     Armstrong Teasdale, LLP
6    4643 S Ulster Street
     Suite 800
7    Denver, Colorado   80237
     Counsel for Matt Martorello

8

9

10   Timothy J. St. George, Esquire
     Troutman Sanders, LLP
11   Troutman Sanders Building
     1001 Haxall Point
12   Richmond, Virginia   23219

13   Justin A. Gray, Esquire
     Rosette, LLP
14   25344 Red Arrow Highway
     Mattawan, Michigan   49071
15   Counsel for Big Picture Loans, LLC, and Ascension
     Technology

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2

3               THE COURT:  Hello.  This is Galloway against Big

4     Picture Loans, civil 3:18CV406.  And identify, beginning with

5     counsel for the plaintiff, who is here and who you represent,

6     please.

7               MR. BENNETT:  Judge, this is Leonard Bennett, and

8     also on the line is Kristi Kelly.  We represent the plaintiff.

9               MR. ERBACH:  Your Honor, this is John Erbach.  Also

10    on the line is Michelle Alamo from Armstrong Teasdale.  We

11    represent Matt Martorello.

12              MR. ST. GEORGE:  Your Honor, this is Timothy St.

13    George.  Also on the line is Justin Gray on behalf of Big

14    Picture Loans and Ascension Technology.

15              THE COURT:  I have this urgent motion to amend the

16    protective order that began with a request for a telephone

17    conference, and there's been several things filed, motion to

18    amend the protective order, ECF 310; supporting motion, ECF

19    311; a status report, ECF 312; Big Picture's opposition, ECF

20    322; plaintiff's reply, ECF 327; Martorello's opposition, ECF

21    323; and plaintiff's reply to that, ECF 326.

22              In addition to that, just so we have plenty of things

23    to do and and can generate more paper in the case, we have

24    Martorello's motion for adjournment and rescheduling, ECF 317;

25    a memo in support, ECF 318; and a response by the plaintiffs,

1    ECF 321.

2              So I guess the first question is -- that I need to

3    get straight in my mind is why is it that there's a need

4    preceived by the plaintiff to amend the protective order in

5    this case, 3:18CV406?  What you want to do is use the documents

6    in Galloway against Martorello, 3:19CV314.  So why is there --

7    why is there an urgency to this?

8              MS. KELLY:  Judge, this is Kristi Kelly on behalf of

9    the plaintiffs.  We filed the motion and requested the urgent

10   decision of the Court because we have an opposition to a motion

11   for sanctions due in the 3:19 Galloway case on the 10th, and we

12   want to use the documents produced in this case to explain to

13   the Court our basis to believe that we filed against the Amlaur

14   defendants in Galloway 3:19 in good faith, and we don't believe

15   we can adequately defend against the motion without the use of

16   those documents.

17             THE COURT:  Well, you know then, given that it's the

18   8th of October, which documents you want to use; is that right?

19             MS. KELLY:  Yes.  We should have all of them by the

20   end of the day today, and we were going to send them to the

21   defendants to see if we could use them, but some of them are

22   also documents from third parties that we've obtained.  So we

23   don't know if we'll get permission in time to use the documents

24   in support of that motion without amending this protective

25   order.

1          THE COURT:  What do you mean; that those documents

2    from third parties were produced pursuant to the protective

3    order?

4          MS. KELLY:  Yes.  So primarily the documents that I

5    think we'll be using is documents produced by the third-party

6    Rosette law firm.  As the Court may recall, there are a lot of

7    documents that we allege were destroyed in this case, and we

8    have had to work incredibly hard to get the documents from

9    third parties, and we've had to fight third parties for this

10   discovery at various courthouses throughout the country, and

11   we've done that, and your Court has heard a lot of those

12   motions here in Virginia as well, and we don't want to have to

13   do that again in Galloway II, the 3:19 case, when it is

14   essentially the coconspirators to this RICO enterprise, and the

15   other issue is fairness.  We are --

16         THE COURT:  Wait a minute.  Ms. Kelly, sorry, but I

17   still don't understand how the protective order in Galloway is

18   implicated in any of the documents.  So tell me, start back

19   again now and answer just these questions.

20         MS. KELLY:  Okay.

21         THE COURT:  How many documents is it that you want to

22   use to file with your response to that motion for sanctions?

23   Roughly.

24         MS. KELLY:  About ten to 20 documents.

25         THE COURT:  All right.  So you know what those

1  documents are, the range; right?

2       MS. KELLY:  I personally don't.  I'm not the one

3  briefing that issue.

4       THE COURT:  Well, who is?

5       MS. KELLY:  Another lawyer on our team is.

6       THE COURT:  Well, your law firm or somebody on the

7  plaintiff's team knows the documents you want to use; right?

8       MS. KELLY:  We're compiling that, and we should have

9  them all by the end of the day.

10       THE COURT:  If you know that, which documents you

11  want to use, it's a whole lot easier for me to decide whether

12  those documents should be produced or not produced if I know

13  what those documents are instead of ruling in blank.  That

14  doesn't mean that a wholesale ruling is out -- a ruling to make

15  all the documents usable from one case to the other is out of

16  order, but -- or that I couldn't consider that, but I see no

17  need to get into something that broad if you all know what you

18  are going to do.

19       And if you know -- if you can give me the documents,

20  and my guess is -- and you give them to Mr. Martorello's

21  lawyers and to Mr. St. George or Mr. Gray -- it may be you all

22  can agree that as to those documents, you have no objection to

23  them being produced by the protective order if they're covered

24  by the protective order, but if they're documents that you got

25  from third parties, they're not covered by the protective order

1  in the same way --

2          MS. KELLY:  They are, Judge.

3          THE COURT:  Wait a minute.  In the same way that they

4  would be if they were documents produced by either -- by the

5  defendants in the case.  There's a different proposition that's

6  involved.  And so getting them from third parties, it looks to

7  me like, makes a difference as to how I would deal with the

8  matter.

9          First, I need to know are there orders in the cases

10 where you got those documents that you want to use that have

11 their own protective orders, or are they -- or was the

12 protective order in 3:18CV406 made applicable to the

13 productions from the third parties?  Do you know which of those

14 is the case, i.e., as to the third parties -- go ahead.

15         MS. KELLY:  Yes.  The third parties produced those

16 documents subject to the protective order in this case and in

17 the Galloway case or the Williams case.  And the third parties

18 are relying on the confidentiality provisions and these

19 protective orders to govern their documents.

20         THE COURT:  Well, if the -- well, that's two

21 different situations that you just told me.  One is you say

22 they're -- and you say the Galloway case.  Which Galloway case

23 are you talking about; 3:19CV314?

24         MS. KELLY:  No, 3:18.  The third parties are allowed

25 to take advantage of the use of the protective order in

1    producing documents to us in the 3:18 Galloway case.

2            THE COURT:  So it seems to me that you need to deal

3    with the fact that those documents are subject to that

4    protective order, and to the extent the documents are

5    third-party documents, then don't you have to go get their

6    permission to use them in the 3:19 case or give them notice

7    under the protective order that you're going to use them and

8    give them a chance to object?

9            MS. KELLY:  Judge, we don't believe that we need to

10   do that with third parties because the third parties know the

11   facts of this case, and the 3:19 Galloway case where we want to

12   use the documents is related to the same factual circumstances

13   in the Galloway 3:18 case.

14           THE COURT:  To quote Paul Bear Bryant in the 1950s,

15   that and a nickel will get you a Coke if they're subject to

16   some order.  So by what agreement or order were those documents

17   produced by those third parties?  And that's what covers their

18   use, it seems to me.

19           MS. KELLY:  I understand, Judge.  It was by either an

20   agreement or an order in the Williams case or in the 3:18

21   Galloway case.

22           THE COURT:  So you need -- you've got two different

23   sets of documents, so you need to have two different

24   rationales.  I mean, some discipline needs to be brought to the

25   process here to get it structured in the proper way.  If you've

1    got 20 documents and that's what you want to use, then confine

2    your motion to 20 documents or 50 or whatever it is you're

3    going to use, and set it up in accord with the rules that apply

4    to the use of those documents.

5           I, in concept, do not buy the argument that there is

6    some kind of tribal immunity attached to it, but there may or

7    may not be depending upon what the documents are and how they

8    were produced, and I can't make those decisions in a vacuum.

9           So if you have documents that you've gotten that are

10   covered by different orders and they're from parties, that's

11   one situation.  If they're from nonparties and third parties,

12   that's another.  So I think that you all are trying to get me

13   to sweep with a big, broad broom here, and I'm not prepared to

14   do that.

15          But the reason I called today is to find out what is

16   the crisis, and I notice that Mr. Martorello's brief, ECF 318,

17   says that you could have done this a month ago.  And you've

18   known that you were going to have to do it, and so you sat on

19   your rights, and now you're asking them to jump through hoops.

20   And if that's correct, then I don't have much sympathy for you.

21          You know what?  You need to get somebody, Mr.

22   Bennett, who -- you've got so many cases over there, you need a

23   case manager to manage everything, keep tract of the deadlines

24   and anticipate what needs to be done in order to get something

25   usable by X date if you're going forward with this.

1          MR. BENNETT:  Your Honor, may I be heard briefly?

2          THE COURT:  Yeah.

3          MR. BENNETT:  Judge, so to give the Court further

4    background, there was a filing in a different case -- the truth

5    is we did not -- we should have but collectively as our team,

6    we missed the fact that the ability to use documents across

7    cases did not include the one that is now at issue here.  At

8    the original 16(b) of Galloway I, this Court, on the record,

9    went on for sometime about why it didn't make any sense that

10   the documents -- those were for jurisdiction.

11         THE COURT:  Excuse me.  What is Galloway I?  What

12   number, what document number is it; 3:18CV406?

13         MR. BENNETT:  Yes, Judge.

14         THE COURT:  All right.

15         MR. BENNETT:  And so and then it was a mistake on our

16   part, and we have a lot going on.  Everybody does, as the Court

17   does, but in keeping all the moving parts together, because we

18   did not -- we had not paid attention to the fact that the

19   protective order had not been extended to the new case with its

20   new dozens of new defense motions.

21         THE COURT:  Then the proper motion for you to have

22   made is to extend the time for filing your response to the

23   motion for sanctions so that a timely adjudication of issues

24   with respect to these 20 or 30 documents you're going to use --

25   you know basically which ones they are -- can be had, and my

1    guess is that probably an agreement could be worked out if it's

2    only 20 or 30 documents, but if you even eliminate ten of them,

3    then I still have less to rule on.

4              But instead of doing that, you all chose to follow

5    the procedure of making the defendants jump through hoops

6    overnight and want me to make an emergency telephone call when,

7    in fact, all you had to do was explain this, that you had

8    overlooked it, and you needed it, and that's good cause for

9    extending the time, and then we have a situation under control.

10             Won't that solve the problem if I do it that way and

11   then everybody will have a chance to be heard without jumping

12   up and down and trying to beat a deadline?

13             MR. BENNETT:  Yes, and I make ore tenus a motion to

14   amend our previous filing or motion to request the enlargement

15   of time in order to allow proper consideration by the

16   defendants, and if the defendants won't then agree --

17             THE COURT:  Wait a minute, wait a minute, Mr.

18   Bennett.  One thing you is you get your mouth going and say too

19   much and it's hard to follow.  Let's -- you want to extend the

20   time to file the response to the motion for sanctions.  My

21   question is, are the people who made the motion for sanctions

22   on the telephone call so that they can be heard on that point?

23             MR. BENNETT:  Not all of them, Judge, no, they're

24   not.

25             THE COURT:  That's another little base we need to

1    touch, isn't it?  Don't we need to touch that base?

2              MR. BENNETT:  We do.

3              THE COURT:  My suggestion is that you take the

4    time -- I'm going to deny without prejudice the plaintiff's

5    motion to amend the protective order and grant the motion for

6    adjournment and rescheduling, ECF 317.  I'm going to expect you

7    to get the case in the proper procedural posture so that I can

8    rule on it with the necessary people understanding this, and

9    you can order the transcript and send it to those people.

10             I am pleased to give you time to respond, extend time

11   to respond to the motion for sanctions so that you can make a

12   full response unless the other side has some serious prejudice

13   because of it, and in a quick look back when this motion came

14   in, I don't see that there's any real prejudice to it.  But

15   they have a right to be heard on it.

16             Otherwise, we've really lost the concept of notice

17   and right to be heard which is fairly important in the system

18   that we have.  And then take the documents, the 20 documents or

19   30 or whatever -- by now you know what they are because you

20   drafted up your report, or by the end of the day or tomorrow

21   you'll know -- and let everybody who is involved know what

22   documents you are using, you propose to use.  You don't have to

23   describe how you are using them.  Just say these are the ones

24   we're proposing to use.

25             And then put them -- you all have to agree in short

13

```
1   order, two days, three days max, we agree to this or or we
2   don't agree to this.  Then you know what the lineup is.  Then I
3   know what is objected to, what is not objected to, and who is
4   objecting to it, and then you'll have to file a motion that
5   outlines it and the right people will be able to respond.  And
6   then you'll have the ability to use them in response.
7           I said before I don't think there's any reason not to
8   have use of one -- documents produced in one litigation in
9   another one, but because of these prolific use of protective
10  orders, which I intend to put a stop to at some point here,
11  there are all these complicating factors.  And when the
12  complicating factors are involved, it's your obligation to
13  figure out how to uncomplicate them, not leave it to me to do.
14          So how much -- you want to make a motion to extend
15  the time to respond to your motion for sanctions in what case;
16  3:19CV314?  Is that what you are asking for?
17          MS. KELLY:  Yes, Judge, that's correct.
18          THE COURT:  And you are responding to number 208; is
19  that where we are in this case?  And 3:19CV --
20          MS. KELLY:  Yes, October 10th is the motion for
21  sanctions.
22          THE COURT:  What happened is you all fouled up, you
23  missed a deadline calculation, didn't figure out what you
24  needed, so file a motion and get it straight.  You can
25  certainly file that motion right away.  Give -- what's the name
```

1    of the lawyer on the other side?  The party is Amlaur Resources

2    and Brian Jedwab or Jedwabs?  They have a right to say, no,

3    well, we object to that, and I'll be glad to expedite the

4    schedule for briefing on all that if it's necessary, but I

5    would think a telephone call probably could solve the problem.

6    That's the way it usually goes if you do responsible things.

7    Who is Jedwab's lawyer?  Who are these people?  I never heard

8    of them.

9              MR. BENNETT:  Judge, we don't --

10             MS. KELLY:  They're based out of D.C.

11             THE COURT:  You all are talking at the same time.  I

12   never heard of these people, Rebecca Ruby Anzidei and Amadou

13   Kilkenny Diaw, but you're going to have --

14             MR. BENNETT:  Judge, we had not heard of them either

15   until this case.

16             THE COURT:  That doesn't make any difference.  My

17   point is, I don't know whether they object or don't object, but

18   you have to give them an opportunity to be heard.  So I'm going

19   to let you -- I'm not going to have the hearing on -- what day

20   was it, the 10th?  The --

21             MS. KELLY:  The 9th.

22             THE COURT:  The 9th.  I'm not going to have a hearing

23   on the 9th, and then I'll let you all get this thing in proper

24   procedural structure.  To keep the record straight, plaintiff's

25   motion to amend protective order, 310, will be denied because

```
 1    of the configuration of the motion, and the reasons and the
 2    different positions will all be different depending upon what
 3    you do after you do what you should have done.
 4              Martorello's motion for adjournment and rescheduling
 5    of October 9, 2019, oral argument, ECF 317, will be denied
 6    because the plaintiff's motion to amend protective order is
 7    premature and has been denied as such.  That will take care of
 8    those.
 9              And then I will expect you to file the proper motions
10    and handle things to a conclusion properly from this point
11    forward, Mr. Bennett.  I guess I haven't given the defendants a
12    chance to say anything, but I'm assuming that you have no
13    objection to the course of action the Court took; is that
14    correct --
15              MR. ERBACH:  We have no objection, Your Honor.
16              THE COURT:  Who is that?
17              MR. ERBACH:  Mr. Erbach.  Sorry.
18              MR. ST. GEORGE:  Your Honor, this is Tim St. George.
19    No objection.  It's essentially what we already proposed.
20              THE COURT:  Thank you all very much.  That will take
21    care of things.  If you want the transcript, Mr. Bennett, you
22    have to order it.
23
24                        (End of proceedings.)
25
```

1

2

3          I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7   _____/s/_____              _____
    P. E. Peterson, RPR                Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25