**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| RENEE GALLOWAY, et al., | |
| Plaintiffs, | Case No. 3:18-cv-00406-REP |
| v. | |
| BIG PICTURE LOANS, LLC et al., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS BIG PICTURE LOANS, LLC AND
ASCENSION TECHNOLOGIES, LLC'S MOTION TO STRIKE (1) DECLARATION OF
JOETTE PETE, (2) DOCUMENTS PRODUCED BY JOETTE PETE, AND
(3) JOETTE PETE FROM PLAINTIFFS' WITNESS LIST**

## INTRODUCTION

In the guise of a "motion to strike," the Corporate Defendants have submitted an improper motion *in limine*, in which they seek to preclude Joette Pete —the Vice Chairwoman of the tribal council at the time Red Rock Tribal Lending, LLC ("Red Rock") was formed — from testifying at the evidentiary hearing on October 28, 2019 and to exclude her documents and declaration from evidence at that hearing. Because this Court specifically prohibited motions *in limine* in its Order scheduling the evidentiary hearing, the Corporate Defendants' motion should be denied.

The Corporate Defendants' motion also fails on the merits. The Corporate Defendants have long known that Ms. Pete has discoverable information helpful to Plaintiffs' case; and they have long known that Plaintiffs sought discovery from her. Yet the Corporate Defendants opposed Plaintiffs' request in early February to take Ms. Pete's deposition in this case; and they moved to quash the deposition subpoena Plaintiffs served on Ms. Pete in *Williams* in early

August. The Corporate Defendants cannot now claim they have been harmed because they did not have a chance to take Ms. Pete's deposition. Nor can they claim "harm" because Plaintiffs had to wait until their reply brief to alert this Court to Ms. Pete's knowledge. If they had not opposed Ms. Pete's deposition last February, Plaintiffs could have included her testimony in their initial statement of position regarding material misrepresentations that Plaintiffs filed at the end of June. As has been their pattern throughout this litigation, however, Defendants resisted and obstructed the discovery, requiring Plaintiffs to spend additional time and resources obtaining the information necessary to prosecute their case.

The Corporate Defendants' argument that Ms. Pete's testimony is "irrelevant" to the proceedings merely repeats what the Corporate Defendants have argued before and which the Fourth Circuit rejected in *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019): the sovereign immunity analysis requires both formal and functional considerations. Ms. Pete's testimony and documents are relevant to functional considerations of the real purpose and intent behind the formation of the Corporate Defendants and the entire unlawful lending scheme. Due to the Corporate Defendants' obstruction, neither this Court nor the Fourth Circuit had the benefit of Ms. Pete's testimony when considering the sovereign immunity issue, and she should be permitted to testify now.

## **BACKGROUND**

Joette Pete served as the Vice Chairwoman of the Lac Vieux Desert Band of Lake Superior Chippewa Indians (LVD) from 2010 to 2016. Ex. 1 (Pete Declaration) ¶ 1.[1] Ms. Pete has personal knowledge of the origin of Defendants' unlawful lending scheme and the LVD's role in that scheme. *See generally id*.

---

[1] At the time Ms. Pete served on the tribal council, her name was Joette Pete-Baldwin.

Defendants have long known that Ms. Pete has knowledge of the events at issue in this case. Ms. Pete's name is on nearly _every_ tribal resolution from that time period, including the resolution to form Red Rock. *See, e.g.*, Ex. 2. And on January 18, 2019, former co-manager of Red Rock, Craig Mansfield, testified at his deposition that Ms. Pete was one of the "folks that [he] would have had discussions with" about "whether to form Red Rock." Ex. 3 at 40:2-22.

Defendants also have long known that Plaintiffs sought discovery from Ms. Pete. Plaintiffs first sought to take Ms. Pete's deposition on February 1, 2019 in connection with their proposal for completing jurisdictional discovery. *See* Dkt. 166 ("Plaintiffs specifically request that this Court grant them leave to (1) depose Williams, Hazen, and Joette Pete-Baldwin, who was the Tribe's vice-chairwoman in 2014 and 2015"). Plaintiffs were not aware that Ms. Pete possessed personal knowledge critical to the case until January 2019 when Justin Martorello produced text messages referring to Ms. Pete. Ex. 4 at 155. In one of these text messages sent on February 8, 2016, Matt Martorello says, "Hey guys, I'd like to make an introduction. Justin is going to be working on a community outreach message at LVD basically outlining how they are not 'rent a tribe' and highlighting benefits to the community. Joel I figured maybe you can help each other in this context. Sounds like Joette has rallied support that it is 'rent a tribe' in the community." *Id*. But rather than allowing Plaintiffs to take this deposition, Defendants opposed Plaintiffs' efforts to reopen jurisdictional discovery and also sought to stay all discovery until class certification was granted. *See* Dkts. 163, 164.

On March 29, 2019, this Court stayed discovery (Dkt. 198) and, on May 9, 2019, denied Plaintiffs' motion for additional jurisdictional discovery (Dkt. 224). However, on July 23, 2019, this Court scheduled an evidentiary hearing on tribal sovereign immunity and set related deadlines for briefing and exchanging exhibit and witness lists. Dkt. 270 ("Evidentiary Hearing

Order"). The Evidentiary Hearing Order specifically directed that "[m]otions *in limine* will be neither necessary nor entertained." *Id.* ¶ 11.

Plaintiffs also pursued discovery from Ms. Pete in the *Williams* matter. The Court had stayed discovery in *Williams* (*see Williams*, Dkt. 313), but on May 3, 2019, this Court in *Williams* issued an Order and Memorandum Opinion permitting discovery regarding whether Defendants destroyed emails and other documents in connection with the sale of Red Rock to the Tribe. Dkts. 477, 478. On May 9, 2019, Plaintiffs' counsel sent Defendants' counsel an email, indicating that they intended to take certain depositions, including Ms. Pete's. *See* Ex. 5. In the email, Plaintiffs' counsel asked if the Rosette Law Firm represented Ms. Pete. On May 16, 2019, Rosette confirmed that it did not represent her. Ex. 6. Plaintiffs' counsel spent the next two months trying to locate Ms. Pete, unsuccessfully attempting to serve subpoenas at addresses in Watersmeet, Michigan and Chicago, Illinois. Exs. 7, 8. Plaintiffs sent notice of each of these subpoenas to Defendants. *Id.*

Plaintiffs' counsel successfully served Ms. Pete with a deposition subpoena on July 26, 2019. Ex. 9. But the Corporate Defendants objected on several grounds, including (1) that the May 3, 2019 order did not authorize the discovery; (2) that the information Ms. Pete "gained in her capacity" as Vice Chairwoman of the tribe was "shielded by immunity"; and (3) that the discovery was untimely. Ex. 10. The Corporate Defendants also filed a motion to quash the subpoena. *See Big Picture Loans, LLC v. Williams*, No. 0:19-mc-00064-JRT-DTS, ECF No. 3 (memorandum) (D. Minn. Aug. 20, 2019). Plaintiffs subsequently withdrew the subpoena. *Id.*

After being served with the subpoena in the *Williams* matter, Ms. Pete reached out to Plaintiffs' counsel to inform them that she had information and documents relevant to this case. Concerned that Ms. Pete could possess privileged information that might be improperly

disclosed, Plaintiffs' counsel retained independent counsel, Eric T. Cooperstein, to advise them on the best way to proceed without violating any ethical rules and to receive the documents and conduct a privilege review. Mr. Cooperstein provided Plaintiffs' counsel with a log, identifying documents that appeared to be privileged, and copies of the non-privileged documents. Plaintiffs' counsel have never seen the documents identified as privileged on the log.

On September 11, 2019, after receiving the non-privileged information from Mr. Cooperstein, Plaintiffs' counsel produced the document log, the non-privileged documents, and supplemental initial disclosures to Defendants' counsel. Ex. 11. On September 13, 2019, Plaintiffs disclosed Ms. Pete as a witness who will testify in person at the October 28, 2019 evidentiary hearing. Dkt. 298. Plaintiffs also submitted a declaration from her in support of their reply regarding material misrepresentations made to this Court by Defendants. *See* Dkt. 286. As Plaintiffs set forth in that brief, Ms. Pete's testimony confirms, among other things, statements made in emails between Robert Rosette and Matt Martorello that Red Rock's managers "aren't involved in the business." *Id.* at 2 & Ex. 1 ¶ 2. Ms. Pete's testimony further confirms that learning the industry was "never the goal when LVD formed Red Rock" and Martorello did not "attempt to teach [the LVD] about the business." Ex. 1 ¶ 6. Instead, "the relationship with Martorello was presented as an opportunity to make money, with no risk of loss, in exchange for rubberstamping LVD's name on loans." *Id.* And according to Pete, "that is  what occurred." *Id.* Ms. Pete also has personal knowledge that Martorello proposed restructuring the enterprise out of fears that he could be investigated and prosecuted personally. *Id.* ¶ 9.

On September 25, 2019, the Corporate Defendants served Ms. Pete with document and deposition subpoenas. *See* Exs. 12-13. Plaintiffs' counsel filed a motion for protective order on October 9, 2019. *See* Dkt. 329.

## ARGUMENT

**A.     The Corporate Defendants' motion is an improper motion *in limine*.**

The Evidentiary Hearing Order prohibits the parties from filing motions *in limine*, stating that such motions "will be neither necessary nor entertained." Dkt. 270 at ¶ 11. Instead of motions *in limine*, the Evidentiary Hearing Order set a schedule for the parties to object to witnesses and exhibits, meet and confer about the objections, and file a list of resolved objections with this Court. *Id.* ¶¶ 9-10. The Evidentiary Hearing Order provides that if objections "are not resolved, they shall be determined at the Final Pretrial Conference or at the evidentiary hearing." *Id.* ¶ 10.

Ignoring the Evidentiary Hearing Order, the Corporate Defendants have moved to strike (1) the Declaration of Joette Pete, (2) documents produced by Joette Pete and included on Plaintiffs' second supplemental disclosure, and (3) Joette Pete from Plaintiffs' witness list for the evidentiary hearing scheduled for October 28, 2019. *See* Dkt. 324. Through their motion, the Corporate Defendants seek to prevent Plaintiffs from referring to or offering this evidence at the October 28, 2019 evidentiary hearing. *See* Dkt. 325 at 7 (requesting this Court to "preclude the introduction of the Pete Declaration or the Pete Documents from evidence, as well as preclude Pete from introducing any testimony at this jurisdictional stage of the case"). Thus, although styled as a "motion to strike," the Corporate Defendants' motion is actually a motion *in limine*, which, pursuant to the Evidentiary Hearing Order, should "not be entertained." Dkt. 270 at ¶ 11.

**B.     Plaintiffs properly submitted the Pete Declaration in support of their reply on Defendants' material misrepresentations.**

The Corporate Defendants argue that Ms. Pete's declaration should be stricken because the declaration is "new evidence" that Plaintiffs improperly submitted in support of their reply brief on Defendants' material misrepresentations. But as the Corporate Defendants' own

authority observes, there is nothing improper about submitting new evidence in a reply brief where, as here, the evidence "specifically relates to issues raised in the initial motion." *DNT, LLC v. Sprint Spectrum, LP*, 750 F. Supp. 2d 616, 629-30 (E.D. Va. 2010).

In their initial Statement of Position, Plaintiffs raised several issues, including that Defendants misrepresented the genesis of the tribal lending arrangement and the LVD, Tribal Council, and the Co-Manager's roles in Red Rock's lending operations. *See* Dkt. 249 at 1-11. Plaintiffs submitted evidence in support of that position, including (1) emails showing the Rosette & Martorello initially structured the tribal lending agreement with an express understanding that the co-managers would not be involved; (2) emails showing that after regulators became involved the enterprise attempted to enhance the "optics" of the co-managers' involvement and at the same time specifically prohibited the co-managers from learning key information about the business; (3) depositions of Red Rock's co-managers demonstrating their lack of involvement; and (4) evidence showing that Defendants misrepresented Red Rock's revenue share and the LVD's desire to enter the online lending business. *Id.* Ms. Pete's testimony — that the co-managers were not involved in the business and that Martorello approached the LVD to offer an opportunity to make money without any risk in exchange for putting the LVD's name on loans — bolsters and confirms that evidence. *See* Dkt. 330-1 (Pete Decl.) ¶¶ 1-7. Plaintiffs also argued that the Corporate Defendants materially misrepresented the reasons for the restructure and their own creation and purpose again submitting emails and other evidence supporting this position. Dkt. 249 at 11-29. Again, Ms. Pete's testimony and documents, which show that Martorello wanted to restructure to protect himself personally (Pete Decl. ¶¶ 8-10), relate to and support these arguments.

The Corporate Defendants accuse Plaintiffs of "attempting to sandbag" the Corporate Defendants by withholding the Pete Declaration until their reply brief. Dkt. 325 at 6. But Plaintiffs were not able to locate Ms. Pete until July 25, 2019, when they finally found a valid address for Ms. Pete in Minnesota and served her with a subpoena in the *Williams* matter as part of spoliation discovery. Ex. 9. Thus, they could not have submitted the Pete Declaration in support of their original Statement of Position Regarding the Corporate Defendants' Material Misrepresentations on June 8, 2019, which they filed on June 28, 2019. *See* Dkt. 249. Even if Plaintiffs had located Ms. Pete before submitting their Statement of Position, Plaintiffs did not know that they would be permitted to present live testimony at the October 28, 2019 evidentiary hearing until this Court entered the Evidentiary Hearing Order on July 23, 2019 (*see* Dkt. 270), which was nearly a month after they filed their original Statement of Position.[2]

Far from "sandbagging," the declaration that Plaintiffs submitted in support of their statement of position reply brief provides the Corporate Defendants with advance notice of the testimony Ms. Pete will provide during the evidentiary hearing. At that time, the Corporate Defendants will have an opportunity to cross-examine Ms. Pete about her statements and test the evidence she submitted in support of that declaration. And regardless, Plaintiffs **never** had the declaration when they submitted their original brief on June 28, 2019 (*See* ECF No. 249) and, more importantly, **never** spoke to Pete until August 2019, which was the first time they learned of her actual knowledge. Thus, rather than "sandbagging" the Corporate Defendants at the evidentiary hearing, they filed the declaration at the first opportunity after obtaining it.

---

[2] The Corporate Defendants' accusations of "sandbagging" are particularly hollow considering the Corporate Defendants obstructed Plaintiffs from deposing Ms. Pete. *See Williams v. Big Picture Loans, LLC*, Case No. 19-mc-00064 (D. Minn. 2019) at ECF 1 (seeking to quash deposition subpoena two days before the deposition). Further, for more than 18 months, the Corporate Defendants have intentionally failed to disclose Pete's knowledge, including the fact that she believed the operation was a rent-a-tribe as evidenced by Martorello's texts.

Submitting new evidence in support of a reply also is permitted where, as here, the purportedly new evidence responds to arguments made in the opposition brief. *See DNT, LLC*, 750 F. Supp. 2d at 629-30 (declining to strike affidavits submitted in response brief where the affidavits responded to Defendants' arguments); *Spencer v. Virginia State Univ.*, No. 3:16cv331-HEH, 2016 WL 6902401, at *5 (E.D. Va. Nov. 23, 2016) (declining to strike reply brief where moving parties did not raise new arguments in reply, but "merely continued their argument from their initial Motion to Dismiss" and used the new evidence to address contentions made in response brief). Plaintiffs rely on the Pete Declaration and Pete documents to refute the arguments that "the Tribe instigated the lending business for its own business purposes" (*see* Dkt. 271 (Corporate Defendants' SOP) at 22-24) and that Red Rock was "designed to operate under Tribal control and have the ultimate say over the business" (*id.* at 32-37). For example, Plaintiffs point out in their reply that Ms. Pete will testify that the Corporate Defendants' position that Red Rock contracted with Bellicose VI to "learn the lending industry" is "inaccurate." Dkt. 286 at 3. Plaintiffs also point out that "[c]ontrary to the Corporate Defendants' representations" Ms. Pete will testify that Martorello "initiated and developed the concept to restructure." *See id.* at 3. Plaintiffs point out that Ms. Pete produced emails (never produced by Martorello or the Corporate Defendants) confirming that Martorello came up with the idea to restructure and planned to stay in control of the enterprise post-restructure. *Id.* at 3-4.

Likely understanding that the declaration and documents responded to the Corporate Defendants' evidence and argument and thus were properly submitted in support of Plaintiffs' reply, the Corporate Defendants assert that Plaintiffs "did not engage" their statement of position, but instead "dismiss[ed] it out of hand" in order to "rely upon the Pete Declaration and Pete Documents." *See* Dkt. 325 (Mtn to Strike) at 6. This assertion is false. Plaintiffs specifically

"engage" Defendants' response brief numerous times in their reply, using Ms. Pete's declaration and documents to confirm and supplement the other record evidence. *See, e.g.*, Dkt. 286 at 5-15 (explaining that the Corporate Defendants' statement of position mischaracterizes Plaintiffs' arguments and takes key pieces of evidence out of context), at 17 (explaining that the Corporate Defendants ignore new evidence developed since the sovereign immunity decision in *Williams*), at 20-26 (challenging the Corporate Defendants' characterization of Plaintiffs' theory related to the method of creation and purpose of the initial lending businesses).

Defendants wrongly rely on *Hegwood v. Ross Stores, Inc.*, No. 3:04-cv-2674-BH (G), 2007 WL 102993 at *1 (N.D. Tex. Jan. 16, 2007). In that unpublished, out-of-circuit case, the district court declined to consider new evidence because the non-moving party would not have an opportunity to respond. *See id.* at *1, n. 3. This case is different. Plaintiffs did not submit the Pete Declaration and Pete Documents in support of a reply to a motion. Instead, they submitted it in support of a reply to a position statement filed in advance of an evidentiary hearing. Ms. Pete has agreed to attend in person the October 28 evidentiary hearing. The Corporate Defendants will have an opportunity to challenge the Pete Documents and cross examine Ms. Pete at that hearing. To the extent Defendants believe Plaintiffs are making new arguments (and Plaintiffs are not), the remedy is to allow a surreply—not to strike. *Thorne v. Astrue*, No. 3:11-cv-720-HEH, 2012 WL 4801840 at *1, n. 2 (E.D. Va. Sept. 20, 2012) (denying motion to strike and allowing non-moving party a surreply where moving party submitted new affidavits in support of her position on reply); *Sampson v. City of Cambridge, Maryland*, 251 F.R.D. 172, 174, n. 3 (D. Md. 2008) (granting motion for surreply so that defendants could address new arguments and evidence submitted with reply).

C.     **The Corporate Defendants' request for sanctions should be denied.**

The Corporate Defendants maintain that Plaintiffs should be sanctioned because (1) Plaintiffs improperly conducted discovery after this Court's discovery cut off, and (2) Plaintiffs failed to timely disclose Ms. Pete as a witness. Dkt. 325 at 7-12. The Corporate Defendants' argument should be rejected for three reasons. First, Plaintiffs have complied with both this Court's Orders and the discovery rules. Second, any delay in disclosing Ms. Pete or her documents was due to Defendants' obstructionist discovery tactics and thus substantially justified. Third, Defendants will not be harmed by the disclosures because (a) under the Evidentiary Hearing Order they had an opportunity to object to the evidence, and (b) they will have an opportunity to cross examine Ms. Pete at the evidentiary hearing.

1.     <u>Plaintiffs have complied with this Court's Orders and the discovery rules.</u>

*Court Orders.*

Although this Court initially denied Plaintiffs' motion for additional jurisdictional discovery, found that further discovery on the jurisdictional issue was "not necessary," and ordered oral argument on the Corporate Defendants' jurisdictional motions for May 22, 2019 (Dkt. 224), this Court subsequently set an evidentiary hearing on subject matter jurisdiction after Plaintiffs alerted this Court to new evidence that appeared to undermine certain representations that the Corporate Defendants made in their motions. Dkt. 270 at ¶ 1. The purpose of the evidentiary hearing is to allow this Court to make findings of fact that will serve as the record on appeal. The Evidentiary Hearing Order permitted the parties to disclose witness lists and exhibit lists in advance of the October 28, 2019 evidentiary hearing and to object to any witness or exhibit listed by an opposing party. Dkt. 270 at ¶¶ 6-8. The Evidentiary Hearing Order then required the parties to meet and confer about any objections and file a list of all resolved

objections. This Court then would rule on unresolved objections at a Final Pretrial Conference or at the evidentiary hearing. *Id.* ¶ 10.

Plaintiffs complied with this Court's Orders. For starters, Pete **voluntarily** provided the declaration. After this Court denied Plaintiffs' request to take jurisdictional discovery, including Ms. Pete's deposition on May 9, 2019, Plaintiffs refrained from sending Ms. Pete a subpoena in this action. When Plaintiffs served Ms. Pete with a deposition subpoena in the *Williams* action in connection with spoliation discovery (which the Corporate Defendants moved to quash), Plaintiffs learned of her knowledge, including with respect to issues at the evidentiary hearing. Although discovery was closed, there was nothing prohibiting Plaintiffs from: (1) obtaining a declaration from Pete for use in this case; or (2) identifying her as a witness for the hearing. Accordingly, Plaintiffs timely listed Ms. Pete on their Witness List (Dkt. 298) as permitted by this Court's Evidentiary Hearing Order (Dkt. 270 ¶ 7). And, of course, had the Corporate Defendants not moved to quash Ms. Pete's deposition in the *Williams* matter, Plaintiffs could have submitted excerpts from that deposition. But due to the Corporate Defendants' obstruction, that deposition did not go forward, and Plaintiffs instead obtained a declaration from Pete. *See* Dkt. 286-3.

Ms. Pete also informed Plaintiffs that she had documents in her possession that may be relevant to the case. Ms. Pete agreed that Plaintiffs' counsel could arrange to have those documents delivered to Mr. Cooperstein, who created a log of the documents and assessed whether any of the documents might be subject to claims of attorney-client privilege by the LVD. Following Mr. Cooperstein's review and in accordance with the Evidentiary Hearing Order, Plaintiffs included the Pete declaration, which attached and referenced two of the emails

she provided to Mr. Cooperstein, on their Exhibit List. *See* Dkt. 297. Again, this was all voluntary.

        *Discovery rules.*

Plaintiffs also have complied with the discovery rules. Rule 26(a) requires parties to disclose the names "of each individual likely to have discoverable information … that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26 also imposes a duty to supplement initial disclosures in a timely fashion "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, **and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing**." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

Defendants concede that they have long known that Ms. Pete has information relevant to the case. Plaintiffs first learned that Ms. Pete might have discoverable information that they would want to use to support their claims when, in January 2019, Justin Martorello produced text messages from Matt Martorello that suggested Ms. Pete had "rallied support" in the LVD community that Mr. Martorello's operation was an illegitimate "rent a tribe" operation. Ex. 4. On February 1, 2019, Plaintiffs made this discovery "known" to the Corporate Defendants by asking this Court for permission to take Ms. Pete's deposition. Dkt. 166. The Corporate Defendants opposed Plaintiffs' request for additional discovery, including Ms. Pete's deposition.

Plaintiffs also "made it known" to the Corporate Defendants that they believed Ms. Pete may have discoverable information by persistently seeking Ms. Pete's deposition in *Williams*. Indeed, Plaintiffs sent two notices of intent to serve subpoenas on Ms. Pete before successfully

serving her in Hibbing, Minnesota on the third try. Two days before the scheduled deposition, the Corporate Defendants moved to quash the deposition, asserting that the information Ms. Pete had was protected from discovery due to sovereign immunity. *See Big Picture Loans, LLC v. Williams*, No. 0:19-mc-00064-JRT-DTS, ECF Nos. 3 (memorandum) (D. Minn. Aug. 20, 2019).

Plaintiffs acknowledge that the Corporate Defendants may not have known that Ms. Pete had documents in her possession relevant to this case. Plaintiffs accordingly supplemented their initial disclosures on September 11, 2019, after receiving the log of Plaintiffs' documents from Eric Cooperstein, who Plaintiffs' counsel retained to review Ms. Pete's documents for privilege. Ex. 11. At that time, Plaintiffs also provided the Corporate Defendants with Mr. Cooperstein's full log as well as the documents that Mr. Cooperstein determined were not privileged. *See id.*

The Corporate Defendants maintain that Plaintiffs should be sanctioned for waiting three weeks after Ms. Pete signed her declaration to supplement their initial disclosures.[3] But "[s]upplementations need not be made as each new item of information is learned." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendments. Instead, supplementation may be made "at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *Id.* Here, this Court set deadlines for the timely exchange of information in advance of the evidentiary hearing. Dkt. 270. And Plaintiffs supplemented their disclosures in accordance with — in fact, two days before — the deadline to disclose their witnesses and exhibits. The Court also set deadlines for the Corporate Defendants to object to those witness and exhibit lists and provided a specific protocol for resolving those objections. In light of these deadlines, the timing of Plaintiffs' supplementation was appropriate.

---

[3] Plaintiffs note that the Corporate Defendants failed to serve **any** initial disclosures or serve any discovery on Plaintiffs. If the Corporate Defendants' argument is taken to its logical conclusion, the Corporate Defendants should be precluded from offering any evidence at the hearing.

2. <u>Any delay in disclosing Ms. Pete's declaration and documents resulted from Defendants' obstructionist discovery tactics and, regardless, was harmless.</u>

Plaintiffs did not unduly delay in disclosing Ms. Pete, her testimony, or her documents. Any delay was substantially justified or harmless. Fed. R. Civ. P. 26(e)(2). The Fourth Circuit applies a five-factor test to determine whether non-disclosure of evidence is substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *S. States*, 318 F.3d at 597.

None of these factors favor sanctions. The Corporate Defendants say that the Pete Declaration and Pete Documents came as a "complete surprise." Dkt. 325. But this cannot be true. The Corporate Defendants knew that Ms. Pete was Vice Chairwoman of the tribal council at the time Red Rock was formed. Ex. 2. And the Corporate Defendants knew that Justin Martorello's text messages showed that Ms. Pete had "rallied support" in the community that the lending enterprise was a "rent a tribe" scheme. Ex. 4. The Corporate Defendants also knew that Plaintiffs had been trying to locate Ms. Pete to serve her with a deposition subpoena for months. When Plaintiffs finally succeeded in serving Ms. Pete, the Corporate Defendants moved to quash, asserting that Ms. Pete's knowledge was protected due to tribal sovereign immunity.

The Corporate Defendants have had ample opportunity to cure any surprise. The Corporate Defendants had two opportunities to depose Ms. Pete—last winter when Plaintiffs requested to depose her in connection with completing jurisdictional discovery in this matter, and again this summer in *Williams* when Plaintiffs served Ms. Pete with a deposition subpoena. Each time, the Corporate Defendants opposed the deposition. The Corporate Defendants also will have an additional opportunity to cure any surprise because they will be able to cross examine her at

the evidentiary hearing. The Corporate Defendants do not argue that allowing Ms. Pete's testimony will disrupt the hearing.

As for the fourth factor, Plaintiffs outline in detail the importance of Ms. Pete's testimony in their Reply in Support of Statement of Position Regarding Material Misrepresentations Made to this Court by Defendants. *See* Dkt. 286. Ms. Pete's knowledge is especially important because she can directly refute the assertions that the Corporate Defendants made in their motions to dismiss for lack of jurisdiction.

The fifth factor — Plaintiffs reasons for not disclosing the evidence earlier — also does not favor sanctions. Plaintiffs learned about Ms. Pete from documents produced by the Corporate Defendants and parties affiliated with the Corporate Defendants, specifically Justin Martorello. Before amending their initial disclosures to disclose Ms. Pete as a person with information that might support their claims, Plaintiffs sought to take her deposition and the Corporate Defendants opposed their efforts. Plaintiffs were not in a position to disclose Ms. Pete and her documents until after Mr. Cooperstein conducted his privilege review.

This case is completely different from the three cases on which Defendants rely to support their assertions of "sandbagging." *See* Dkt. 325 at 10. *Hartford Casualty Insurance Company v. MCJ Clothiers*, 54 Fed. Appx 384, 387-88 (4th Cir. 2002), involved a defendant in a declaratory judgment action who failed to timely disclose that one of its witnesses would testify about damages. Here, by contrast, Plaintiffs provided Defendants with a declaration from Ms. Pete, outlining her knowledge and the substance of the testimony she will provide at the evidentiary hearing. *Spotnana, Inc. v. Am. Talent Agency*, No. 09 Civ. 3698 (LAP), 2010 WL 3341837 at *2 (S.D.N.Y. Aug. 17, 2010), involved a plaintiff that, unlike this case, failed to make proper initial disclosures "without any explanation at all." And in *Texas Instruments, Inc.*

*v. Hyundai Electronics Industries Co.*, 50 F. Supp. 2d 619 (E.D. Tex. 1999), the defendant failed to supplement its initial disclosures with information it had in its possession for months.

Simply put, any delay in disclosing Ms. Pete was substantially justified because Defendants thwarted Plaintiffs' discovery efforts for months. And any delay was harmless to Defendants who had two opportunities to depose her, but objected, and who will be able to cross examine her at the evidentiary hearing. Defendants' motion to strike should be denied.

**C.    Ms. Pete's testimony is admissible to impeach the Corporate Defendants' witnesses.**

The Corporate Defendants contend that Ms. Pete's testimony is inadmissible to impeach the "stated purpose of the …Tribe and its tribal council." Dkt. 325 at 12. This argument rehashes the Corporate Defendants' prior position that this Court should confine the sovereign immunity analysis to formal considerations. As Plaintiffs point out in their Statement of Position Reply, the Fourth Circuit in *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019) did not confine its sovereign immunity analysis to formal considerations. Particularly pertinent to the Corporate Defendants' argument here, the Fourth Circuit considered evidence as to whether the "stated purpose" of the Corporate Defendants' formation was its "actual purpose." *Id.* at 178-80. The whole point of the October 28, 2019 evidentiary hearing is for this Court to determine whether additional evidence — including testimony from witnesses like Ms. Pete — exists that is relevant to the sovereign immunity analysis but was not part of the record in *Williams* or the prior sovereign immunity briefing in this case.

The Corporate Defendants also mischaracterize the testimony that Ms. Pete will give at the evidentiary hearing. Ms. Pete will not testify about *her own* motives, but instead about the tribal council and tribe's motives for participating in the online lending industry generally and in Martorello's enterprise in particular. Put differently, Ms. Pete's testimony will show that the

"stated purpose" of the tribe was a ruse to cover up the real purpose: making money without risk while enabling Martorello to reap a windfall of profits for an illegal lending scheme.

The Corporate Defendants assert that it is not the business of courts to inquire into the motives of legislators. But this is precisely what the *Breakthrough* factors require this Court to do: examine the creation, purpose, and intent of tribal commercial enterprises. Ms. Pete's testimony is relevant to this Court's analysis of those factors.

## CONCLUSION

For all these reasons, the Corporate Defendants' motion to strike should be denied.

RESPECTFULLY SUBMITTED AND DATED this 18th day of October, 2019.

CONSUMER LITIGATION ASSOCIATES, P.C.

By: /s/ Leonard A. Bennett, VSB #37523
Leonard A. Bennett, VSB #37523
Email: lenbennett@clalegal.com
Elizabeth W. Hanes, VSB #75574
Email: elizabeth@clalegal.com
Craig C. Marchiando, VSB #89736
Email: craig@clalegal.com
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662

Kristi C. Kelly, VSB #72791
Email: kkelly@kellyguzzo.com
Andrew J. Guzzo, VSB #82170
Email: aguzzo@kellyguzzo.com
Casey S. Nash, VSB #84261
Email: casey@kellyguzzo.com
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167

E. Michelle Drake, *Admitted Pro Hac Vice*
Email: emdrake@bm.net

John G. Albanese, *Admitted Pro Hac Vice*
Email: jalbanese@bm.net
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Telephone: (612) 594-5999
Facsimile: (612) 584-4470

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email:  jmurray@terrellmarshall.com
Elizabeth A. Adams, *Admitted Pro Hac Vice*
Email: eadams@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Matthew Wessler, *Admitted Pro Hac Vice*
Email: matt@guptawessler.com
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

*Attorneys for Plaintiffs and Proposed Classes*

CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

> David N. Anthony, VSB #31696
> Email: david.anthony@troutmansanders.com
> Timothy J. St. George, VSB #77349
> Email: tim.stgeorge@troutmansanders.com
> William H. Hurd, VSB #16769
> Email: william.hurd@troutman.com
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, Virginia 23219
> Telephone: (804) 697-5410
> Facsimile: (804) 698-5118
>
> *Attorneys for Defendants*
>
> Hugh M. Fain, III,  VSB #26494
> Email: hfain@spottsfain.com
> M. F. Connell Mullins, Jr., VSB #47213
> Email: cmullins@spottsfain.com
> John M. Erbach, VSB #76695
> Email: jerbach@spottsfain.com
> SPOTTS FAIN PC
> 411 East Franklin Street, Suite 600
> Richmond, Virginia 23219
> Telephone: (804) 697-2069
> Facsimile: (804) 697-2169
>
> Richard L. Scheff, *Admitted Pro Hac Vice*
> Email: rlscheff@ armstrongteasdale.com
> Jonathan P. Boughrum, *Admitted Pro Hac Vice*
> Email: jboughrum@ armstrongteasdale.com
> Michael Christopher Witsch, *Admitted Pro Hac Vice*
> Email: mwitsch@armstrongteasdale.com
> ARMSTRONG TEASDALE
> 1500 Market Street
> 12th Floor, East Tower
> Philadelphia. Pennsylvania 19102
> Telephone: (215) 246-3479
> Facsimile: (215) 569-8228

Tod Daniel Stephens, *Admitted Pro Hac Vice*
Email: tstephens@armstrongteasdale.com
Paul Louis Brusati, *Admitted Pro Hac Vice*
Email:  pbrusati@armstrongteasdale.com
ARMSTRONG TEASDALE
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile: (314) 621-5065

Michelle Lynn Alamo, *Admitted Pro Hac Vice*
Email: malamo@armstrongteasdale.com
Alec Paul Harris, *Admitted Pro Hac Vice*
Email: aharris@armstrongteasdale.com
ARMSTRONG TEASDALE
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Facsimile: (720) 200-0679

Charles Palella, *Admitted Pro Hac Vice*
Email: cpalella@armstrongteasdale.com
ARMSTRONG TEASDALE
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 209-4400
Facsimile: (212) 409-8385

*Attorneys for Defendant Matt Martorello*

Craig T. Merritt, VSB #20281
Email: cmerritt@cblaw.com
James E. Moore, VSB # 4526
Email: jmoore@cblaw.com
Shannan M. Fitzgerald, VSB #90712
Email: sfitzgerald@cblaw.com
Email: kmueller@cblaw.com
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-6112

Justin Alexander Gray, *Admitted Pro Hac Vice*
Email: jgray@rosettelaw.com
Anna Marek Bruty, *Admitted Pro Hac Vice*
Email: abruty@rosettelaw.com
ROSETTE, LLP
44 Grandville Avenue SW, Suite 300
Grand Rapids, Michigan 49503
Telephone: (616) 655-1601
Facsimile: (517) 913-6443

Cindy Dawn Hanson, *Admitted Pro Hac Vice*
Email: cindy@troutman.com
TROUTMAN SANDERS LLP
600 Peachtree Street N.E., Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

Alan D. Wingfield. VSB #27489
Email: alan.wingfield@troutman.com
H. Scott Kelly, VSB #80546
Email: scott.kelly@troutman.com
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1350
Facsimile: (804) 698-5172

*Attorneys for Defendants Big Picture Loans, LLC and Ascension Technologies, LLC*

DATED this 18th day of October, 2019.

CONSUMER LITIGATION ASSOCIATES, P.C.

By: /s/ Leonard A. Bennett, VSB #37523
  Leonard A. Bennett, VSB #37523
  Email: lenbennett@clalegal.com
  763 J. Clyde Morris Boulevard, Suite 1-A
  Newport News, Virginia 23601
  Telephone: (757) 930-3660
  Facsimile: (757) 930-3662

*Attorneys for Plaintiffs and Proposed Classes*