# EXHIBIT 2

# EXCLUSIVITY AGREEMENT
## and LETTER OF INTENT

This EXCLUSIVITY AGREEMENT and LETTER OF INTENT ("hereinafter "Agreement"), made and entered into as of this _____ day of July, 2011 ("Execution Date"), by and between Tribal Loan Management, LLC, ('TLM"), and Tribal Lending Solutions, LLC, which is wholly owned and operated by Scott Merrit, Kyle Silcox, Tim Mackin, Todd Pebles and Curt Potts in their individual capacities ("TLS") (which TLM and TLS shall be collectively referred to as "Developer") on the one hand, and the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized Indian Tribe ("Tribe") on the other hand (the Developer and the Tribe are hereinafter collectively referred to as the "Parties").

### Preliminary Statements

WHEREAS,   The Tribe is a federally recognized Indian Tribe and is recognized as possessing powers of self-government, including but not limited to the power to authorize and conduct lending on its lands located within the boundaries of the Lac Vieux Desert Band of Lake Superior Chippewa Indians Reservation, subject to the applicable provisions of Tribal, State and Federal law, and with primary regulatory governance of the Tribe.

WHEREAS,   The land upon which the Tribe intends to develop and operate a lending operation providing small loans to consumers over the internet ("Project") is on the sovereign Tribe's Reservation.

WHEREAS,   With the assistance of the Developer, the Tribe intends to adopt laws to authorize Tribal lending, and to promulgate regulations for a Tribal regulatory agency to ensure integrity and compliance with applicable laws for the lending operation.

WHEREAS,   The Tribe presently lacks the financial resources, expertise, and requisite hardware or software to develop the Project, as defined herein.

WHEREAS,   Developer has represented to the Tribe that it has the financial capacity and ability to develop and coordinate the Project, and believes it can make satisfactory arrangements to meet all other financial obligations contained herein.

WHEREAS,   The Tribe and the Developer are acting by and through their respective duly appointed and authorized officers.

WHEREAS,   The Parties intend to deal exclusively with each other and in good faith for the purpose of negotiating and entering into the Transaction Documents which shall include various additional Development Agreements, various Finance and Loan Agreements, Investor Referral Agreements, Hardware and Software Agreements and such other agreements as the Parties deem necessary to memorialize their understanding of their obligations with respect to the Project (collectively, the "Transaction Documents") which will more fully describe the Parties' ongoing relationship with respect to the Project; however, until such time as the

1

Transaction Documents are executed, this Agreement shall serve as the Parties' binding agreement with respect to the matters addressed herein.

WHEREAS, The Developer, with the Tribe's assistance, intends to provide advice regarding i) the overall development of the Project to provide an entire turn-key lending operation to provide consumers with small loans; ii) requisite and applicable approvals; iii) equipping and furnishing of the appropriate hardware and software to run the operation as well as the call center; iv) a business structure and pro-forma models for the Project to achieve maximum profitability to the Tribe in its first month of operation; v) establishing internal control systems and manuals, financial statements, and budgets; vi) staffing needs and necessary training of personnel; and vii) development and implementation of an overall marketing plan for trade-shows and attraction of additional investors.

WHEREAS, The Tribe understands that the Developer is required to spend significant resources both in up-front cash, and to exploit relationships and expertise to create the Project and provide a turn-key lending operation, and the Tribe agrees to cooperate with the Developer to facilitate the development of the Project, including negotiating in good faith to conclude all of the various transaction Documents to allow the Project to come to fruition, which means that once all of the various Transaction Documents are completed, the Tribe, as the owner of the Project and the lender to the consumers, shall realize approximately $3.00 per transaction in net revenues for new loans and approximately $.75 for loan extensions and approximately $1.50 for renewed loans after all operating expenses are paid by the Tribe and loan is transacted.

## AGREEMENT

### ARTICLE I
### ENGAGEMENT OF DEVELOPER

**1.1.** **Engagement of Developer.** Subject to the terms, conditions and contingencies set forth herein, the Tribe hereby engages Developer, on an exclusive basis, to negotiate and enter into the Transaction Documents with any and all parties, including with TLM, TLS and other parties introduced to the Tribe, to develop and manage all aspects of the Project.

**1.2.** **Terms for Transaction Documents.** The Transaction Documents shall provide the terms and conditions for the finance, development, and management of the Project and shall specifically include the following terms:

(a) After operating expenses are paid and any and all loans are transacted, the Transaction Documents shall be structured in such a manner whereby all net revenues flowing back to the Tribe should equal approximately $3.00 per new lending transaction and approximately $.75 for loan extensions and approximately $1.50 loan renewals.

(b) With regard to any loan and finance agreements between the Tribe and third party lenders/investors, the Tribe's loan from any such lender/investor shall be a

2

limited recourse obligation, and be secured by and repaid through specifically any revenues derived from the Project, and shall not encumber any existing Tribal or trust asset.

(c) With regard to any small loan agreement between the Tribe and any end user/consumer, the Tribe shall have agreements with third party lenders/investors to purchase any small loans that default or become delinquent, if initial attempts at collection do not result in debt repayment.

(d) Except for in-kind support, such as Tribal staff and professional services and existing physical facilities and associated infrastructure, that should be provided by the Tribe from time-to-time, and subject to the Tribe's sole discretion, the Project's development costs will be arranged solely by Developers *(TLM)* and shall impose no costs to the Tribe.

(e) The Developer, and any and all parties which shall become subject to the Transaction Documents, shall comply with Tribal law and all regulations promulgated to authorize the Tribe to lend, and any and all parties may be required to be licensed as a suitable vendor by the Tribe's regulatory agency *(Lending Agency)* on a case-by-case basis.

(f) The Developers shall be responsible for identifying all parties necessary for the development and operation of the Project, as well as structuring the Transaction Documents so that the Project may operate, and the Tribe agrees to work in good faith with the Developer to enter such Transaction Documents as they are presented including providing a waiver of its sovereign immunity on a case-by-case basis.

## ARTICLE II
## COMMITMENT

2.1 **Commitment by Developer.** Upon execution of this Agreement, Developers shall immediately begin to:

i) Identify investors for the purpose of providing the Tribe with working capital to be utilized for the Tribe's lending business;

ii) Provide the Tribe with the ability to utilize the intellectual property, software, and hardware necessary;

iii) Consult with the Tribe to set up all requisite hardware, software, and other items needed for the Project, as well as setting up the Tribal call-center to administer the Tribal loans;

iv) Identify all relevant parties and negotiate and draft all Transaction Documents to implement the Project;

3

  v) Provide the Tribe with all draft Tribal governmental enterprise documents to be the sole owner of the Project; and

  vi) Provide the Tribe with all draft Tribal governmental laws and regulations to authorize the Project and regulate the lending operation.

 **2.2 Commitment by Tribe.** Upon execution of this Agreement, Tribe shall immediately begin to:

  i) Meet regularly with the Developer to answer relevant questions regarding the Project, and work in good faith with the Developers to identify work space for the operation of the Project and the call center;

  ii) Provide Developer access to those areas where the Project is being set-up, developed, and operated;

  iii) Timely consider, negotiate in good faith, and approve any and all Transaction Documents, to bring the Project to fruition;

  iv) Timely consider and adopt any and all requisite Tribal laws and regulations to properly authorize and regulate the Project; and

  v) Take such other steps as the Tribe determines necessary or appropriate to facilitate the Developer's work to bring the Project to fruition.

## ARTICLE III
## MISCELLANEOUS

 **3.1 Statutory and Regulatory Requirements.** Upon execution of the Transaction Documents, the Parties acknowledge and agree they will use good faith efforts to satisfy any requisite Tribal, State or Federal statutory and regulatory conditions that are applicable within a commercially reasonable time period.

 **3.2 Compliance.** During the letter of intent, the Parties shall comply with any and all applicable requirements of the Tribe, State, and United States.

 **3.3 Dispute Resolution and Waiver of Sovereign Immunity.** The Parties agree that any disputes that arise between the Parties under this Agreement or the Transaction Documents contemplated hereby shall initially be referred to Rob Rosette of TLM, or his designee, and the Chairman of the Tribe, or his designee, who shall attempt to resolve the issue by mutual agreement. If those two individuals are unable to resolve the issue, the dispute shall be resolved by binding arbitration under the auspices of the American Arbitration Association in Maricopa County, Arizona. The Tribe grants a limited, transactional waiver of its sovereign immunity from suit exclusively to the Developer, and no other person or entity, for the sole and exclusive purpose of permitting or compelling arbitration and other remedies as provided in this Section to

JPB 00385

enforce an arbitration award. This limited waiver of sovereign immunity shall become effective upon execution of this letter of intent by the Tribal Council of the Lac Vieux Desert Band of Lake Superior Chippewa Indians in accordance with the Tribe's governing documents.

**3.4　Severability.** If any provision of this Agreement is determined, or alleged, to be unenforceable because Federal or State approval thereof is required and has not been obtained, such provision may, upon the mutual consent of the Parties, be severed from this Agreement and the remaining provisions hereof remain in full force and effect, provided that the basic understanding of the Parties as expressed in this Agreement are maintained.

**3.5　Additional Terms and Conditions.** The above terms and conditions will be expanded upon during the preparation and good faith negotiation of the Transaction Documents. The Transaction Documents will also include other standard and commercially reasonable terms and conditions consistent with agreements of this nature and terms and conditions consistent with this Agreement.

**3.6　Non-Disclosure/Confidentiality.**　Neither the Tribe nor Developer shall reveal the terms and conditions of this Agreement or the Transaction Documents except as necessary to prepare the documentation and conduct due diligence in accordance with the foregoing. During the course of this Agreement, each party may have access to confidential or proprietary information or trade secrets of the other ("Confidential Information"). Except as expressly required in the course of performance of this Agreement, neither party will, without prior written consent of the other, directly or indirectly, disclose, disseminate, publish, distribute or otherwise make known to any third person or use for any purpose any such confidential or proprietary information or trade secrets of the other. Further, the Tribe agrees not to sell, assign, trade, distribute, make available or divulge the Confidential Information or any part thereof to any other person, firm or corporation, except as otherwise provided for in this Agreement or as specifically authorized in writing by the Developer. Tribe agrees to protect the information in the Confidential Information in the same manner as it protects its own confidential and proprietary information, which shall not be less than reasonable care.

SIGNATURES ON FOLLOWING PAGE

JPB 00386

Effective as of the Execution Date defined herein.

TRIBAL LOAN MANAGEMENT, LLC:

By: _____          Date: _____
      Flint Richardson, Member


TRIBAL LENDING SOLUTIONS, LLC:

By: _____          Date: _____
      Scott Merritt, Member


LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS:

By: _____          Date: _____
      Alan M. Shively, Tribal Chairman

6

JPB 00387