IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY, ET AL.,

    Plaintiffs,

v.                          Civil Action No. 3:18-cv-406

BIG PICTURE LOANS, LLC,
ET AL.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Defendant MATT MARTORELLO'S ("MARTORELLO") MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE (ECF No. 676) ("the Motion"). The matter was fully briefed and a hearing was held on November 16, 2023. Having considered the Motion, the memorandum in support, and the response and reply memoranda, and for the reasons set out on the record during that hearing, and as set forth below, the Motion is hereby denied.

## BACKGROUND

### I. Factual and Procedural History

On June 11, 2018, Plaintiffs Renee Galloway, Dianne Turner, Earl Browne, Rose Marie Buchert, Regina Nolte, Teresa Titus, and Kevin Minor, on behalf of themselves and all individuals similarly situated, filed this proposed Class Action Complaint against

Defendants Big Picture Loans, LLC ("Big Picture"), Ascension Technologies, Inc. ("Ascension"), and Martorello. ECF No. 1. The Complaint set out that the plaintiffs were from, respectively, Virginia, Virginia, California, Illinois, Indiana, Ohio, and Washington, and that they aimed to represent borrowers in their respective states. ECF No. 1 at ¶¶ 89–115. On August 23, 2018, the plaintiffs filed a First Amended Class Action Complaint adding two additional Virginia plaintiffs, one additional Illinois plaintiff, and new plaintiffs from Texas, New Jersey, Florida, North Carolina, and Maryland. ECF No. 30 at ¶¶ 24–32.

This litigation is closely related to the previously filed litigation in this Court, Williams v. Big Picture Loans, LLC, No. 3:17-cv-461 ("Williams"). There, the Williams plaintiffs alleged a usurious loan enterprise designed to evade state usury laws, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), through a so-called "rent-a-tribe" scheme aimed at cloaking illegal lending in tribal sovereign immunity. Williams, ECF No. 1.[1]

Here, the plaintiffs alleged the same claims as in Williams (a RICO violation and violations of state lending laws), but as a putative class action on behalf of additional plaintiffs

---

[1] And indeed, the Court found in Williams that Martorello, from at least 2011, owned, directed, and/or controlled several of the key entities behind the enterprise. Williams, ECF No. 1406 at 4–7.

representing borrowers from additional states. ECF No. 30 at ¶¶ 213-350. Like the original Complaint in this case, the First Amended Complaint set out the named plaintiffs as representing classes of similarly situated plaintiffs based on their respective states. Id.

Developments in another related litigation in this Court left Martorello as the only the defendant remaining in this case. In Galloway v. Williams, No. 3:19-cv-470, some of the same plaintiffs sued members of the Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council, as well as Big Picture and Ascension. After the plaintiffs settled with Big Picture and Ascension there, the Court granted their motion to dismiss the claims against Big Picture and Ascension here. ECF No. 372. That left only Martorello as a defendant in this case.

At the outset of this case, Plaintiffs asserted that venue is proper based on 28 U.S.C. § 1391(b)(2) "because a substantial part of the events giving rise to the claims occurred in this District." Id. at ¶ 15. Plaintiffs also argued venue is proper based on RICO, because 18 U.S.C. § 1965(a) provides that a civil action may be brought in a district court for "'any district' where a person 'resides, is found, as an agent, or transacts his affairs.'" Id. (quoting 18 U.S.C. § 1965(a)).

Martorello made several motions responsive to the Complaint without objecting to venue. First, Martorello moved to dismiss the

case for lack of personal jurisdiction and for failure to state a claim upon which relief could be granted. ECF Nos. 45-46. The Court denied both motions. ECF No. 382. Then, after the First Amended Complaint was filed, Martorello renewed both of those motions and the Court denied them again. ECF Nos. 410, 417; 613, 614. But, Martorello did not challenge venue. Martorello did file a motion to transfer this case to the Bankruptcy Court for the Northern District of Texas, which the Court also denied. ECF Nos. 364, 377. Again, Martorello did not raise any venue objections.

After further years of litigation in both this case and Williams, the Williams plaintiffs succeeded in large part. On June 16, 2023, the Court granted their motion for partial summary judgment on their § 1962(d) RICO conspiracy claim, and parts of their § 1962(c) RICO claim, and denied Martorello's defenses that tribal law governed the loans and tribal sovereign immunity shielded them from litigation. Williams, ECF Nos. 1328, 1350, 1373. The Court entered judgment against Martorello in the amount of $43,401,817.47, plus interest, on September 22, 2023. ECF Nos. 1406, 1407.

Because they would be bound by the class judgment in Williams, the Virginia plaintiffs in this case moved to dismiss their claims against Martorello in this case. ECF No. 666. Furthermore, during a conference call held on October 2, 2023, the remaining plaintiffs

4

agreed to dismiss every claim other than the RICO violation.[2]
Transcript of Status Conference Held on October 2, 2023 (ECF No.
675). The Court dismissed those claims without prejudice the same
day. ECF Nos. 674, 678. And it granted the Virginia plaintiffs'
motion to dismiss on October 25, 2023. ECF No. 679. So, all that
remains in this case are thirteen plaintiffs, who are not Virginia
residents, and one claim (the RICO violation) against Martorello.

## II. The Instant Motion

Martorello filed the Motion on October 13, 2023. In effect,
he made two motions: a Motion to Dismiss for Improper Venue; and
a Motion to Transfer Venue.

### a. The Motion to Dismiss for Improper Venue

In the Motion to Dismiss, Martorello alleges that, because
all of the Virginia plaintiffs are no longer party to the case,
venue is no longer proper. Id. In his supporting memorandum,
Martorello seems to acknowledge that he did not timely object to
venue at the outset. ECF No. 677 at 4. That, of course, constituted
waiver of the venue objection. But, Martorello argues that Fed. R.
Civ. P. 12(g)(2) permits a party to file a later motion to dismiss
on Rule 12(b)(3) (venue) grounds where the defense was not
"available" at the time the party filed its earlier motion or

---

[2] The dismissed claims were the various violations of each
respective state's usury laws, as well as an unjust enrichment
claim. See ECF No. 30.

answer. Accordingly, he asserts that the withdrawal of the Virginia plaintiffs' claims against him made a venue objection "available" when it previously had not been available. Id. at 4-5.

First, Martorello argues that there is no longer a basis for § 1391(b)(2) "transactional venue." This, says Martorello, is because, with the withdrawal of the Virginia plaintiffs, it can no longer be that "a substantial part of the events or omissions giving rise to the claim occur[ing]" in the district. Id. at 6 (quoting 28 U.S.C. § 1391(b)(2)). The remaining plaintiffs reside in Texas, California, Indiana, Illinois, Ohio, Washington, New Jersey, Florida, North Carolina, and Maryland, and the remaining RICO violation respects conduct in those states. Id. at 7. Not in the Eastern District of Virginia. According to Martorello, this change resulted in a newly available venue objection even though he did not object to venue in his earlier Rule 12 motions. Id. He argues further that the Court's ability to exercise "pendant venue" over the non-Virginia plaintiffs is now extinguished. ECF No. 684 at 2-3.

Second, Martorello contends that the RICO venue provision does not apply. 18 U.S.C. § 1965(a) provides that a RICO claim may be brought in any district where a defendant "resides, is found, has an agent, or transacts his affairs." Similar to his first argument, Martorello argues that, because the Virginia plaintiffs are no longer party to this case, Martorello no longer "transacts

6

his affairs" here. And that therefore, the RICO venue statute no longer makes venue proper here. ECF No. 676 at 7.

In response, Plaintiffs make two arguments addressed to the Motion to Dismiss for Improper Venue. First, they argue that Martorello waived his improper venue challenge. Citing Cobalt Boats, LLC v. Sea Ray Boats, Inc., 254 F. Supp. 3d 836, 838 (E.D. Va. 2017), Plaintiffs offer that there are only two exceptions to the general waiver rule under Fed. R. Civ. P. 12(g)(2). ECF No. 681 at 7. One is when there has been an intervening change in the law giving rise to a venue objection that was not previously available. The other is when the facts at the time of the filing of the Rule 12 motions were such that the defendant could not reasonably ascertain the availability of his improper venue defense. Id. at 7-8. Plaintiffs argue that neither of these scenarios apply here.

On this point, Plaintiffs contend that Martorello could, and should, have objected to venue as to the claims of the out of state Plaintiffs at the outset of this case. Id. at 8. Citing a string of cases, they argue that "it is by now well settled that [venue and personal jurisdiction] requirements to suit must be satisfied for each and every named plaintiff [in a class action] for the suit to go forward." Id. at 8-9 (quoting Abrams Shell v. Shell Oil Co., 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001)). Then, Plaintiffs say that it was clear from the face of the Complaint

7

and First Amended Complaint that there were out-of-state plaintiffs representing out-of-state classes. Id. at 9–10. This is true, they say, for venue purposes, with respect to both the state law claims and the RICO claim. Accordingly, under then-existing law, the out-of-state plaintiffs could not have "piggybacked" on the proper venue of the Virginia plaintiffs in the first place. So Martorello had the defense available at the outset and waived it by not raising it. Id. at 10–11.

Second, Plaintiffs argue that, even if Martorello could successfully raise an objection to § 1391(b)(2) transactional venue, RICO's venue provision still applies.[3] Id. at 13. They contend that, apart from the residence of the remaining Plaintiffs in this case, Martorello nonetheless "transact[ed] his affairs" in this district by running the illegal lending scheme in Virginia beginning in 2011. Id. at 13–14 (quoting 18 U.S.C. § 1965(a)). They assert that it does not matter whether the transacting of business relates to the claim.

### b. The Motion to Transfer Venue

Martorello argues that, even if the Court does not grant the Motion to Dismiss for Improper Venue, venue should be transferred to the Northern District of Texas. ECF No. 677 at 7. Citing this

---

[3] The Court may find proper venue under either § 1391 or RICO's venue provision, 18 U.S.C. § 1965(a); neither is preclusive of the other. See 28 U.S.C. § 1406(b).

Court's interpretation of 28 U.S.C. § 1404(a) in Orbital Austl.
Pty Ltd. V. Daimler AG, No. 3:14-cv-808, 2015 WL 4042178 (E.D. Va.
July 1, 2015), he outlines a two-step inquiry for motions to
transfer venue. Id. at 8. First, he says that the Court must
determine whether the action could have been brought in the
proposed transferee forum. Second, the Court should consider: (1)
the plaintiff's choice of forum; (2) the convenience of the
parties; (3) access to evidence; (4) the convenience of the
witnesses, including third-party witnesses; and (5) the interest
of justice. Id. (citing Samsung Elec. Co. v. Rambus, Inc., 386 F.
Supp. 2d 708, 716 (E.D. Va. 2005)). The parties disagree on whether
the § 1404(a) factors tipped in favor of transfer or not.

DISCUSSION

## I. Legal Standard

### a. *Motions to Dismiss for Improper Venue*

28 U.S.C. § 1391(b)(2) provides that venue is proper in a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred (so-called
"transactional" venue). In addition, in RICO claims, 18 U.S.C. §
1965(a) provides that venue is proper in any district in which an
alleged RICO violator resides, is found, has an agent, or transacts
his affairs. And, "[n]othing in this chapter shall impair the
jurisdiction of a district court of any matter involving a party

9

who does not interpose timely and sufficient objection to the venue." 28 U.S.C. § 1406(b).

Fed. R. Civ. P. 12 governs the pleading and waiver of venue. Rule 12(b) permits a defendant to challenge a plaintiff's chosen venue as improper. See also Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979) ("[V]enue is [not] fundamentally preliminary in the sense that subject-matter jurisdiction is, for [it is a] personal privilege[] of the defendant, rather than absolute stricture[] on the court, and . . . may be waived by the parties."). However, Rules 12(g)(2) and 12(h)(1) provide that the objection to venue must be made in the first Rule 12(b) motion or the first responsive pleading, whichever is first. But, as Martorello says, Rule 12(g)(2) does limit the objection to defenses that were "available to the party" at the time of filing. If there is no objection to venue, the objection is, generally, waived, but there are exceptions.

Our Court of Appeals recognizes an Intervening Law Exception to the waiver rule. "The Fourth Circuit recognizes a general exception to waiver 'when there has been an intervening change in the law recognizing an issue that was not previously available.'" Cobalt Boats, 254 F. Supp. 3d at 838 (quoting Holland v. Big River Mins. Corp., 181 F.3d 597, 605-06 (4th Cir. 1999)).

In some cases, waiver can be abrogated by later discovery of faulty pleadings or changed facts. For example, in Seidel v. Kirby,

10

296 F. Supp. 3d 745 (D. Md. 2017), the original Complaint seemed to imply that the allegedly defamatory statements at issue were made in Maryland, the forum state. Id. at 750-51. Therefore, the defendants were not unreasonable in assuming § 1391(b)(2) transactional venue applied. Id. When it was revealed later that the statements were not made in Maryland, the court held that the defendants did not waive their venue objection, because the defense was "not available" to them, per the language of Rule 12(g)(2). Id. at 751.

However, in class actions, additional venue rules apply. "[T]he law is clear that in determining whether venue for a putative class action is proper, courts are to look . . . at the allegations pertaining to the named representatives." Newbauer v. Jackson Hewitt Tax Serv. Inc., No. 2:18-cv-679, 2019 WL 1398172, at *8 (E.D. Va. Mar. 28, 2019) (emphasis added) (quoting Murdoch v. Rosenberg & Assocs., LLC, 875 F. Supp. 2d 6, 11 (D.D.C. 2012)). So, at the outset of a putative class action, proper venue must be established with respect to each named plaintiff, not just ones from the forum state. See also Abrams Shell v. Shell Oil Co., 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001) ("[I]t is by now well settled that [venue] requirements to suit must be satisfied for each and every named plaintiff for the suit to go forward.") (emphasis in original) (citing United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1129-30 (2d. Cir. 1974); Dunn v. Sullivan,

758 F. Supp. 210, 216 (D. Del. 1991) ("Venue in a class action is proper for the entire class if it is proper for the named plaintiffs.") (emphasis added)); see also Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 316 (D.S.C. Jan. 21, 1992) ("[P]laintiffs must establish that venue is proper as to each defendant.").

Furthermore, in a RICO case, venue is proper in any district where a defendant "transacts his affairs." 18 U.S.C. § 1965(a). This provision "has been interpreted to require that a defendant regularly transacts business of a substantial and continuous character within the district." Magic Toyota, 784 F. Supp. at 319. With respect to transactions of an individual through corporations, "the court will look to the transaction of corporate affairs by a defendant who has such a large stake in the corporation that he is in effect transacting his own affairs." Id. at 320. And, the requirement is that the defendant "transacts his affairs" in the district on the day the Complaint is filed. Medoil Corp. v. Clark, 753 F. Supp. 592, 598-99 (W.D.N.C. 1990).

### b. Motions to Transfer Venue

28 U.S.C. § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Courts follow a two-step inquiry when considering § 1404 motions to transfer venue. Williams v. Microbilt Corp., No. 3:19-cv-85, 2019 WL 7988583, at *20 (E.D. Va. Sept. 23, 2019). "[T]he movant must establish both: (1) that the plaintiff's claims could have been brought in the transferee forum; and, (2) that the interest of justice and convenience of the parties and witnesses warrant transfer to that forum." Id. (citing Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).

Whether an action could have been brought in the transferee forum requires the plaintiff to show that, "at the time of the filing of the action, the [transferee] district court . . . could have exercised personal jurisdiction over the defendants and the district was a proper venue for the action without waiver or consent by the defendants." Nationwide Mut. Ins. Co. v. The Overlook, LLC, No. 4:10-cv-69, 2010 WL 2520973, at *2 (E.D. Va. June 17, 2010) (citing Konthoulas v. A.H. Robins Co., Inc., 745 F.2d 312, 315 (4th Cir. 1984)).

Having established that an action could have been brought in the transferee forum, "[d]istrict courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers and Pipefitters

13

Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).

The first factor is the plaintiff's choice of forum. Normally, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Bd. of Trs. v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007). However, courts give less priority to plaintiffs when they represent a class and when they do not have a connection with the forum. Owner-Operator Indep. Drivers Ass'n, Inc. v. N. Am. Van Lines, Inc., 382 F. Supp. 2d 821, 824 (W.D. Va. 2005). But, as this Court has held, "so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum," even an out-of-state plaintiff's choice of forum, in a class action, is entitled to weight. Samsung, 386 F. Supp. 2d at 716.

The second factor is witnesses' convenience and access. This "factor looks to which forum better enables witnesses to testify in person as 'live testimony is preferred to other means of presenting evidence.'" Hengle v. Curry, No. 3:18-cv-100, 2018 WL 3016289, at *10 (E.D. Va. June 15, 2018) (quoting Samsung, 386 F. Supp. 2d at 718). The "convenience of non-party witnesses takes priority over that of party witnesses." Id. (citing Samsung, 386 F. Supp. 2d at 718). The party "asserting witness inconvenience

14

has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh, 250 F. Supp. 2d at 636. Without that kind of proof, the Court cannot ascertain the issue of convenience in any meaningful way. Williams, No. 3:17-cv-461, 2020 WL 1879675, at *4 (E.D. Va. Apr. 15, 2020).

The third factor is convenience of the parties. In assessing the parties' convenience, courts consider (1) "the ease of access to sources of proof," (2) "the cost of obtaining the attendance of witnesses," and (3) "the availability of compulsory process." Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (quoting Samsung, 386 F. Supp. 2d at 717 n. 13).

The fourth factor is the interest of justice. The interest of justice facet "relates to the efficient administration of the court system" and "encompasses public interest factors aimed at systemic integrity and fairness." Intellor Grp. V. Cicero, No. TDC-19-10, 2019 WL 1643549, at *6 (D. Md. Apr. 16, 2019). "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." Byerson, 467 F. Supp. 2d at 635. "One of the most commonly cited aspects of the interest of justice factor is the goal of avoiding multiplicity of litigation from a single transaction." Samsung, 386 F. Supp. 2d at 721. Sometimes, "[t]he interests of justice may be decisive in ruling

15

on a transfer motion, even though the convenience of the parties and witnesses point in a different direction." Id. at 716.

## II. Analysis

### a. *Motion to Dismiss*

#### 1. *Venue under 28 U.S.C. § 1391(b)(2): "Transactional Venue"*

Martorello does not contend that he timely objected to venue when this case was originally filed. Instead, he focuses on the fact that the Virginia plaintiffs have been dismissed from the suit. According to him, their dismissal has made "available" a defense that was not "available to [him]" when he filed his first Rule 12 motions. This argument fails.

The objection to § 1391(b)(2) "transactional" venue was available to Martorello when he filed his original and renewed Rule 12 motions. It is true that, as originally filed, proper venue in this forum was based on the Virginia plaintiffs, and that link has dissolved. However, following the plain language of Newbauer, 2019 WL 1398172, at *8 ("[T]he law is clear that in determining whether venue for a putative class action is proper, courts are to look . . . at the allegations pertaining to the named representatives."), Abrams Shell, 165 F. Supp. at 1107 n.5 ("[I]t is by now well settled that [venue] requirements to suit must be satisfied for each and every named plaintiff for the suit to go forward."), Dunn, 758 F. Supp. at 216 ("Venue in a class action is

16

proper for the entire class if it is proper for the named plaintiffs."), and Magic Toyota, 784 F. Supp. at 316 ("[P]laintiffs must establish that venue is proper as to each defendant."), it was Plaintiffs' burden to establish venue with respect to each named plaintiff, not just the Virginia ones. Both the Complaint and the First Amended Complaint were clear that this was a putative class action. And both were clear that each named plaintiff was suing on behalf of themselves and classes made up of borrowers from their respective states. Thus, an improper venue objection was "available" to Martorello when the Complaint and First Amended Complaint were filed, following Rule 12(g)(3).

No other exception applies. Although the Court of Appeals made it clear that where a change in the law intervenes since a waiver of venue, a venue objection becomes newly available, no such change has happened here. Cobalt Boats, 254 F. Supp. 3d at 838; Holland, 181 F.3d at 605-06. Martorello does not assert any legal changes. He asserts merely that there are "changed facts." ECF No. 684 at 2.

However, none of the cases on which Martorello relies support a newly available venue objection based on changed facts. For example, Martorello cites to Seidel for the proposition that a venue objection becomes available when it was unknown at the beginning of the case. ECF No. 677 at 4. But, in that case, defamatory statements were later revealed not to have occurred in

17

the forum state after all. The defendants had no reason to know that at the time the original Complaint was filed, therefore the revelation gave rise to an objection to § 1391(b)(2) transactional venue. See 296 F. Supp. 3d at 750-51. Those facts are not analogous to the facts in this case. Here, nothing that was previously unknown became known later: the plaintiffs were simply pared down.

Martorello also cites to Kaspers v. Howmedica Osteonics Corp., No. C15-0053JLR, 2015 WL 12085853 (W.D. Wash. Oct. 23, 2015), to argue that the "changed case landscape" applies to this case as it did there. ECF No. 677 at 4-5. In fact, Martorello argues that this case has changed so much as to make available a previously unavailable defense. But this argument misses the mark, too. The case in Kaspers had been severed, transferred, and whittled down from fourteen plaintiffs asserting claims based on nine medical implants to two plaintiffs asserting claims based on one implant. 2015 WL 12085853, at *2-4. By contrast, here, only four plaintiffs have withdrawn, leaving thirteen, in the original forum in which the case was brought. And, the motion at issue there was a Rule 12(b)(6) motion, not a 12(b)(3) venue motion, as here. Id. at *3. The court was able to treat that as a motion for judgment on the pleadings, a significant circumstance not present here. Id. at *4. Because this case remains essentially the same, and because Martorello could have objected to Plaintiffs "piggybacking" the

out-of-staters' venue on the in-staters', he waived any venue objections and § 1391 venue is proper for the remaining Plaintiffs.

### 2. *Venue Under 28 U.S.C. § 1965(a): "RICO Venue"*

Even if this case could be dismissed for improper venue under § 1391(b)(2), venue is still proper under 28 U.S.C. § 1965(a), the RICO venue provision. § 1965(a) provides that, in a RICO case, venue is proper in any district where a defendant "transacts his affairs." Martorello argues that "the transactions that Plaintiffs allege are relevant rest solely on connections to Virginia consumers that are no longer at issue in this case." ECF No. 677 at 7. But that does not matter. Magic Toyota and Medoil make clear that there is no requirement that the transacting of affairs must relate to the claims at issue in the case. See Magic Toyota, 784 F. Supp. at 319 (holding only that § 1965(a) "has been interpreted to require that a defendant regularly transacts business of a substantial and continuous character within the district"); Medoil, 753 F. Supp. at 598–600 (declining, in an in-depth analysis of the RICO venue statute, to even assess whether the affairs must relate to the subject matter of the suit).

And, Martorello, in fact, did transact his affairs in the Eastern District of Virginia. The Court found that Martorello helmed the illegal lending enterprise--in the Eastern District of Virginia--from 2011 through at least 2018, when this case was filed. See Williams, ECF No. 1406 at 4–7; Medoil, 753 F. Supp. 592

19

("[I]n order to demonstrate venue under the phrase "transacts his affairs", the plaintiff must show that the defendant is transacting his affairs in the district where the suit is initiated on the day the complaint is filed."). So, the RICO venue provision applies here.

### b. *Motion to Transfer Venue*

In the alternative, Martorello moves that the case be transferred to the Northern District of Texas. Given that Plaintiffs do not consent to transfer, we turn to the two-part test set out in Microbilt, 2019 WL 7988583, at *20. The first part asks whether the case could have been brought in the Northern District of Texas. It could have. Martorello resides there, meaning for either § 1391 transactional venue or § 1965(a) RICO venue, it would have been proper (as would personal jurisdiction). So the analysis turns next to part two: whether "the interest of justice and convenience of the parties and witnesses warrant transfer to that forum." Microbilt, 2019 WL 7988583, at *20.

Our Court of Appeals has instructed district courts to consider: "(1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Plumbers and Pipefitters, 791 F.3d at 444. The Court addresses each factor in turn.

20

First, it is true that the traditional rule that great weight is afforded to the plaintiffs' choice of venue does not apply where, as here, the plaintiffs represent a class and the venue is not their home. See Owner-Operator, 382 F. Supp. 2d at 824 ("Although the plaintiff's choice of forum is to be given considerable deference by the court where that forum is also the district in which he resides and where a close nexus exists between that forum and the plaintiff's underlying claims, less deference is given to the plaintiff's choice of forum where that plaintiff represents a class."). But, this Court has held in Samsung that "even then, the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum." 386 F. Supp. at 716.

That is the case here. This case has been ongoing in this Court for over five years. It is closely related to other litigation in this Court, also ongoing for years. Without question, there exists a connection between this forum and Plaintiffs' claim, writ large. Moreover, Plaintiffs, the Court, and Martorello have all been litigating it here without any concern for venue. Therefore, Plaintiffs' choice of venue in this Court is entitled to sufficient weight, as to augur against transfer.

21

Second, the convenience of witnesses is a neutral factor. Although preference should be given to in-person testimony and non-party witnesses' convenience over party witnesses', following Hengle, 2018 WL 3016289, at *10, most witnesses have already testified in this case by way of deposition, and both parties anticipate that further testimony will be done by way of deposition too. Moreover, only one Plaintiff resides in Texas. This only tips the scale slightly towards the Northern District of Texas for witness convenience, and that is assuming the very big assumption that that Plaintiff would even testify. Although Martorello and his brother Justin may testify, their party status renders their testimony less important than other witnesses. See id. (citing Samsung, 386 F. Supp. 2d at 718 ("[T]he convenience of non-party witnesses takes priority over that of party witnesses."). Other non-party witnesses would have to travel either way. So, on balance, this factor is neutral.

Third, convenience of the parties tips slightly towards transfer. Assessing the three Byerson considerations (the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process), 467 F. Supp. 2d at 633, reveals that neither district is more or less preferable to Plaintiffs. Most of the evidence is electronic and already discovered. Further, other witnesses (if any) will likely have to travel to either district. Compulsory process does not

22

apply. But, Martorello resides in the Northern District of Texas. So it would be more convenient for him. So, this factor weighs slightly toward transfer.

Fourth, and finally, the interest of justice weighs heavily against transfer. The interest of justice is the most important factor in this case: "In some cases, 'the interest of justice may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction.'" Byerson, 467 F. Supp. 2d at 635 (quoting Samsung, 386 F. Supp. 2d at 716). "Efficient administration of the court system" and "encompass[ing] public interest factors aimed at 'systemic integrity and fairness'" would be much better served by keeping this case in this district rather than transferring it at this late juncture. Intellor Group, 2019 WL 1643549, at *6; Byerson, 467 F. Supp. 2d at 635 (quoting Samsung, 386 F. Supp. 2d at 716).

As discussed, this case has been underway in this Court for over five years. As of December 13, 2023, there have been 689 filings. Moving this case to a new district would be an upheaval of dramatic proportions. One of the most important ends of justice is "the goal of avoiding multiplicity of litigation from a single transaction." Samsung, 386 F. Supp. 2d at 721. That objective is served by declining to transfer a case as dense and complex as this one to a new district at this stage of the case. So, this factor weighs heavily in favor of denying the motion to transfer.

And this factor weighs the heaviest in the analysis. See Samsung, 386 F. Supp. 2d at 716.

On balance, therefore, the first factor weighs in favor of denying the motion, the second factor is neutral, the third factor weighs in favor of granting the motion, and the fourth and most important factor weighs heavily in favor of denying the motion. Therefore, the Court will not grant the motion to transfer venue to the Northern District of Texas.

## CONCLUSION

For the reasons set forth above, and on the record during the hearing on November 16, 2023, Defendant MARTORELLO'S MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE (ECF No. 676) is hereby denied.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 13, 2023

24